1  **COHELAN KHOURY & SINGER**
2  Isam C. Khoury (SBN 58759)
   ikhoury@ckslaw.com
3  Michael D. Singer (SBN 115301)
   msinger@ckslaw.com
4  Rosemary C. Khoury (SBN 331307)
   rkhoury@ckslaw.com
5  605 C Street, Suite 200
6  San Diego, CA 92101
7  Telephone: (619) 595-3001/Facsimile: (619) 595-3000

8

9  Attorneys for PENNY A. SCOTT, on behalf of herself
   and other similarly-situated employees
10

   **UNITED STATES DISTRICT COURT**
11
   **SOUTHERN DISTRICT OF CALIFORNIA**
12

13  PENNY A. SCOTT, on behalf of            CASE NO. 21CV1470 MMA (KSC)
    herself and other similarly-situated
14  employees,                              **CLASS ACTION**

15                  Plaintiff,             **DECLARATION OF ISAM C.**
                                           **KHOURY IN SUPPORT OF**
16         v.                              **PLAINTIFF'S MOTION FOR**
                                           **PRELIMINARY APPROVAL OF**
17                                         **CLASS ACTION SETTLEMENT**
    BLACKSTONE CONSULTING,
18  INC., a California Corporation; and    Date:      July 10, 2023
    DOES 1 Through 10, inclusive,          Time:      2:30 p.m.
19                                         Judge:     Michael M. Anello
                                           Ctrm.:     3D (3rd Floor)
20                  Defendants.

21

22

23                                         Complaint filed:  May 21, 2021
                                           Removal Date:     August 18, 2021
24                                         Trial date:       Not set

25

26

27

28

_Left margin vertical text:_ COHELAN KHOURY & SINGER / 605 C Street, Suite 200 / San Diego, CA 92101

---

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

I, Isam C. Khoury, declare:

1.     I am a Founding Partner in the law firm Cohelan Khoury & Singer and counsel of record for Plaintiff Penny A. Scott in this wage and hour class and PAGA action. The following facts are within my personal knowledge and I could and would competently testify to them.

2.     I am a 1973 Hastings School of Law graduate and was admitted to the California State Bar in 1974 and am admitted to practice in all state courts in California and in the all federal courts in California, as well as the First Circuit Court of the State of Hawaii and the United States Court of Appeals for Sixth Circuit.

3.     In 1981, Timothy D. Cohelan and I formed Cohelan & Khoury, a Partnership of Professional Law Corporations, and within a few years began to focus on class actions. Cohelan & Khoury became Cohelan Khoury & Singer in 2009. Our firm represents plaintiffs in class and representative action litigation, including wage and hour, labor and employment, antitrust, consumer protection, construction defect and other public interest class and representative actions.

4.     I, along with Partner Diana M. Khoury, have been selected by our peers based on ethics, experience and reputation as Super Lawyers in Civil Litigation by the Southern California Super Lawyers Magazine for the years 2012 through the present. Michael D. Singer, Managing Partner, was named to the Daily Journal 2012, 2013, and 2018 list of Top California Labor and Employment Attorneys and selected to the Southern California Super Lawyers in 2010, 2012-2019. Mr. Singer was admitted as a fellow to the College of Labor and Employment Attorneys in 2020. I am AV – Preeminent rated by Martindale-Hubbell, as are many attorneys in our firm.

5.     Cohelan Khoury & Singer has been certified by the State Bar of California to provide the Mandatory Continuing Legal Education activity

Declaration of Isam C. Khoury in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement - Case No. 21CV1470 MMA (KSC)

1    entitled "Litigating California Class Actions" and has conducted MCLE

2    certified seminars on this topic. Senior Partner, Timothy D. Cohelan, is the

3    author of <u>Cohelan on California Class Actions</u> (1997-2022, updated annually),

4    part of Thomson Reuters Expert Series updated annually. Michael D. Singer

5    is a contributing author on the CEB publication <u>California Wage and Hour</u>

6    <u>Law: Compliance and Litigation</u> (2010-2022 updated annually), in which he

7    wrote the opening chapter overview on California Wage and Hour laws,

8    including the public policy underpinnings for those laws, and the Private

9    Attorneys General Act ("PAGA") Claim chapter. He is also a contributing

10   author to the <u>CEB Practitioner</u> (2020), including guidelines for oral argument

11   and forms for PAGA litigation. Mr. Singer has served as a columnist for the

12   California State Bar, Litigation Section on wage and hour litigation and has

13   contributed articles on wage and hour and class action issues through the

14   years to numerous California publications.

15        6.    Prior to COVID-19, Mr. Singer typically lectured several times

16   per year for continuing education courses on wage and hour and class action

17   issues at events in San Diego, Orange County, Los Angeles, and San

18   Francisco. For over twelve years, he has served as wage and hour amicus co-

19   chair and liaison for the California Employment Lawyers Association,

20   drafting, reviewing, and coordinating amicus filings on wage and hour issues

21   in the California Supreme Court and Courts of Appeal. He has been engaged

22   in the practice of labor and employment law since 2000, handling well over

23   300 wage and hour class and PAGA actions and several individual labor

24   cases. He has litigated several types of employment actions, including

25   complex ERISA employee welfare benefit plan cases, as well as wage and

26   hour class actions before Federal and State Courts in California. In 2014, Mr.

27   Singer tried a wage and hour class action involving claims for illegally

28   deducted wages and unreimbursed expenses. *Dilts v Penske Logistics LLC,*

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

*Inc.* Mr. Singer successfully appealed the trial court ruling in *Dilts* finding state laws preempted by the FAAAA for truck drivers. Mr. Singer has participated in over 50 appellate cases and argued writs and appeals before several California District Courts of Appeal, arguing for plaintiffs on rehearing in *Brinker International Inc. v. Superior Court* before the Fourth District Court of Appeal, as well as federal appeals in the Second, Third, and Ninth Circuit Courts of Appeals. In addition, Mr. Singer has drafted numerous appellate briefs as the appellant, respondent, or amicus curiae in employment class and individual actions. As co-Class Counsel in *Brinker Restaurant Corp. v. Superior Court* [formerly reported at 165 Cal.App.4th 25 (2008)], Mr. Singer argued before the Fourth District Court of Appeal in May 2008 on transfer from the California Supreme Court, and co-authored the successful Petition for Review. My firm has successfully tried class cases, obtained appellate reversals of class certification denials *(Hicks v. Kaufman and Broad,* 89 Cal.App.4th 908 (2001))*, certified multiple wage and hour class.

7.    As a part of our overall firm philosophy lawyers perform community service and pro bono work. Firm volunteer work includes service through Legal Aid at Work, San Diego Volunteer Lawyer Program, the San Diego County Bar Foundation and Consumer Attorneys of San Diego. I am a past recipient of the Wiley W. Manuel Award for Pro Bono Service. Mr. Singer has served on the Legal Aid at Work Board of Directors since 2011. Mr. Cohelan served as the Chair of the San Diego Volunteer Lawyers Program from 2015-2018, and currently sits on the Board as past Chair. He completed 24 years of volunteer judicial service as a Judge Pro Tem of the San Diego Superior Court. Since admission to the California Bar, Partner Diana M. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, and American Association for Justice serving and chairing various

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

committees through the years for these organizations. For six years from 2010 through 2015, Ms. Khoury served on the Board of Directors for Consumer Attorneys of San Diego. Since 2013, Ms. Khoury actively serves on the Board of Directors for the San Diego County Bar Foundation, the 501(c)(3) charitable arm of the San Diego County Bar Association providing access to justice to the underserved and impoverished in the San Diego County region. Our firm's recent pro bono victories include a settlement which prohibits the City of San Diego from targeting homeless people for illegal lodging tickets under Penal Code section 467(j). (*Spencer v. City of San Diego*, USDC Case No. 04CV-2314 BEN (WMC).) The *Spencer* settlement had the effect of increasing the number of available shelter beds in San Diego.

8.    Cohelan Khoury & Singer has been certified Class Counsel in the following contested proceedings: *Aguilar v. Atlantic Richfield, et al.,* San Diego County Superior Court Case No. 00700810; *Andino v. Kaiser Foundation Hospitals*, Alameda County Superior Court Case No. RG11580548; *Arellano, et al. v. Container Connection of Southern California, Inc.*, Los Angeles County Superior Court Case No. BC500675; *BANK OF AMERICA WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION*, United States District Court, District of Kansas MDL Case No. 2138 (FLSA Condition Certification); *Czuchaj v. Conair Corporation*, United States District Court, Southern District of California Case No. 13CV1901; *Dilts, et al. v. Penske Logistics, L.L.C., et al.,* United States District Court, Southern District of California Case No. 08CV0318; *Englert, et al. v. AT&T Wireless Services, Inc., et al.,* Circuit Court of the Second Circuit, State of Hawaii Case No. 02-1-0074; *Evans v. Washington Mutual Bank,* Orange County Superior Court Case No. 02CC15415; *Filion v. Ethan Allen Retail Inc.,* United States District Court, Southern District of California Case No. 05CV2340; *Gerard v. Les Schwab Tire Centers of California, Inc.,*

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

Sacramento County Superior Court Case No. 2007-30000003; *Grana, et al. v. PICO Enterprises, Inc. dba Phyle Inventory Control Specialist and PICS* L.A.S.C. Case No. BC472891; *Gutierrez v. Save Mart Supermarkets* San Mateo Superior Case No. CIV530955; *Wilcox v Albertsons,* San Diego County Superior Court Case No. GIC833922; *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County Register,* Orange County Superior Court Case No. 03CC08756; *Graham, et al. v. Overland Solutions, Inc.,* United States District Court, Southern District of California Case No. 10CV0672 (FLSA Conditional Certification); *Hicks v. Kaufman and Broad Home Corp.,* Los Angeles County Superior Court Case No. B198414; *Hohnbaum, et al. v. Brinker Restaurant Corporation, et al.,* San Diego County Superior Court Case No. GIC834348; *KEMP, et al. v. CSEA, et al.,* Circuit Court of the First Circuit, State of Hawaii Case No. 98-3815-08; *LIBERTY MUTUAL OVERTIME CASES*, Los Angeles County Superior Court Case No. JCCP 4234; *Mitchell, et al. v. Acosta, Inc., dba Acosta Sales and Marketing Company,* United States District Court, Central District of California Case No.11CV07196 (FLSA Conditional Certification); *Santana v. Rady Children's Hospital-San Diego*, San Diego County Superior Court Case No. 37-2014-00022411; *Schaffer v. Rady Children's Hospital-San Diego*, San Diego County Superior Court Case No. 337-2015-00022978; *Schneider, et al. v. Catholic Healthcare West*, San Francisco County Superior Court Case No. CGC-10-506243; *Salucci v. Amada Senior Care, Inc.*, Orange County Superior Court Case No. 37-2015-00778081; *Smith v. California Pizza Kitchen,* San Diego County Superior Court Case No. 37-2008-00083992; STEROID HORMONE PRODUCT CASES, Los Angeles County Superior Court Case No. JCCP 4363; *Stevenson Aibangbee v. Victoria Apartments, et al.,* Los Angeles County Superior Court Case No. BC299498; *Swift v. Liebert Corp.,* Orange County Superior Court Case No. 00CC04588; *Sylvia, et al. v.*

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

*Wells Fargo Home Mortgage, Inc.,* Orange County Superior Court Case No. 03CC05747; *Vaquero v. Ashley Furniture Industries, Inc., et al.,* United States District Court, Central District of California Case No. 12CV8590; *Vaquero v. Stoneledge Furniture LLC*, Los Angeles County Superior Court Case No. BC522676; *Vazquez v. Kraft Heinz Foods Company*, Unites States District Court, Southern District of California Case No. 16-CV-02749; *Watson v. Raytheon Company,* United States District Court, Southern District of California Case No. 1OCV0634; and *Weigele v. FedEx Ground Package System, Inc.,* United States District Court, Southern District of California Case No. 06CV1330, among others, as well as being appointed Class Counsel in connection with well over 200 class action settlements.

9.    As Class and PAGA Representative Counsel, Cohelan Khoury & Singer has actively commenced, prosecuted and concluded numerous state and federal class and representative actions. Since 2016, Cohelan Khoury & Singer has played a central role in the resolution of over 200 such cases, including the following, which have received court approval: (a) *Arellano, et al. v. Container Connection of Southern California, Inc.*, Los Angeles County Superior Court, Case No. BC500675, Hon. Anne I. Jones; (b) *Castro v. Home Depot U.S.A., Inc.*, Los Angeles County Superior Court, Case No. BC577885, Hon. Elihu M. Berle; (c) *Czuchaj v. Conair Corporation*, United States District Court, Southern District of California, Case No. 13-CV-1901 BEN, Hon. Roger T. Benitez; (d) *Gardiner v. TSYS*, United States District Court, Central District of California, Case No. 18-cv-00415, Hon. David O. Carter; (e) *Grana v. PICO Enterprises, Inc.*, Los Angeles County Superior Court, Case No. BC472891, Hon. Stephanie M. Bowick; (f) *Gutierrez v. Save Mart Supermarkets*, San Mateo County Superior Court, Case No. CIV530955, Hon. Marie S. Weiner; (g) *Hernandez v. Workforce Enterprises WFE, Inc.*, Los Angeles County Superior Court Case No. BC590913, Hon. Elihu M. Berle;

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

(h) *Hicks v. Poway Academy of Hair Design, Inc.*, San Diego County Superior Court, Case No. 2014-00026517, Hon. Ronald L. Styn; (i) *Hubbard v. Caliber Home Loans, Inc.,* Orange County Superior Court, Case No. 2018-01017838; (j) *Klein v. Loomis Armored US, LLC*, San Bernardino County Superior Court, Case No. CIVDS1704547, Hon. David Cohn; (k) *Laureano v. The Art of Shaving*, Los Angeles County Superior Court, Case No. BC550093, Hon. Amy D. Hogue; (l) *Lopez, et al. v. Management & Training Corporation, et al.*, United States District Court, Southern District of California, Case No. 17-CV-010624 JM, Hon. Jeffrey T. Miller; (m) *Magdaleno v. Shelly Automotive, LLC*, Orange County Superior Court Case No. 2013-0043958, Hon. Kim. G. Dunning; (n) *McGrath, et al. v. Wyndham Resort Development Corporation, et al.*, United States District Court, Southern District of California, Case. No. 15-CV-1631 JM, Hon. Jeffrey T. Miller; (o) *Mena v. Wolfgang Puck Catering*, Los Angeles County Superior Court Case No. BC582743, Hon. John Shepard Wiley, Jr.; (p) *Morales v. The Los Angeles Country Club*, Los Angeles County Superior Court, Case No. BC566493, Hon. William F. Highberger; (q) *Nijmeh v. Bon Appetit Management Company, Inc.*, Santa Clara County Superior Court, Case No. 16CV294127, Hon. Thomas E. Kuhnle; (r) *Plascencia v. Aramark Services, Inc.*, Santa Clara County Superior Court, Case No. 2015-1-CV-288310, Hon. Brian C. Walsh; (s) *Plimpton v. Gordon Trucking, Inc.*, San Bernardino County Superior Court, Case No. CIV-DS-1511918, Hon. Donald Alvarez; (t) *Raya v. Amazon*, USDC, Northern District of California, Case No. 15-CV-02005 MMC, Hon. Maxine M. Chesney; (u) *Rivas v. ESA Management*, USDC, Central District of California, Case No. 14-CV-5767, Hon. Dale S. Fischer; (v) *Rodriguez v Healthcare Partner Medical Group, Inc.,* Los Angeles County Superior Court, Case No. BC541313, Hon. Kenneth Freeman; (w) *Ryan v. Dignity Health*, Sacramento County Superior Court Case No. 2013-00147371,

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1   Honorable Alan G. Perkins; (x) *Santana v. Rady Children's Hospital-San*

2   *Diego*, San Diego County Superior Court Case No. 37-2014-00022411, Hon.

3   Joel R. Wohlfeil; (y) *Schaffer v. Rady Children's Hospital-San Diego*, San

4   Diego County Superior Court Case No. 37-2015-00022978; Hon. Joel R.

5   Wohlfeil; (z) *Schneider v. Catholic Healthcare West*, San Francisco County

6   Superior Court, Case No. CGC-10-506243, Hon. Angela Bradstreet; (aa)

7   *Schwartz v Bank of the West*, San Francisco County Superior Court, Case No.

8   CGC-14-538955, Hon. Harold E. Kahn; (bb) *Syed v. M.I. Swaco*, USDC,

9   Eastern District of California, Case No. 12-CV-01718 DAD, Hon. Dale A.

10  Drozd; (cc) *Vaquero, et al. v. Stoneledge Furniture, LLC*, Los Angeles

11  County Superior Court Case No. BC522676, Hon. Elihu M. Berle; (dd)

12  *Vazquez v. Kraft Heinz Foods Company*, USDC, Southern District of

13  California Case No. 16-CV-02749, Hon. William Q. Hayes; (ee) *Walsh v.*

14  *Cedars-Sinai Medical Center*, Los Angeles County Superior Court Case No.

15  BC487290, Hon. William F. Highberger; (ff) *Popal v. Wells Fargo Bank*

16  *National Association*, San Diego County Superior Court Case No. 37-2020-

17  00038101, Hon. Gregory W. Pollock, among many others.

18      10.   Plaintiff Penny A. Scott ("Plaintiff Scott") seeks preliminary

19  approval of a $1,000,000 non-reversionary, pre-certification wage and hour

20  class action and Private Attorneys General Act (PAGA) Settlement with

21  Blackstone Consulting, Inc. ("BCI" or "Defendant") for an estimated 1,179

22  California Class Members.[1] The proposed Settlement is memorialized in the

23  Class Action and PAGA Settlement Agreement ("Settlement Agreement" or

24  "SA"), attached as **Exhibit 1** hereto.

25      11.   <u>Defendant</u> BCI hires, employs, manages, and provides service

26  employees to hospitals, schools, universities, and industrial sites throughout

27  

28  [1] The putative class consists of approximately 87.5% non-exempt Security Officers and 12.5% non-exempt employees in other positions.

California.

12.    <u>Plaintiff</u> Scott was employed by Defendant BCI as a non-exempt Security Officer at the Kaiser Permanente Zion Medical Center in San Diego County from approximately December 15, 2017 through March 8, 2021.

13.    As part of this Settlement, the Parties sought leave of court to file a Second Amended Complaint adding Plaintiffs who filed other actions against BCI to this action. The Second Amended Complaint was filed on May 17, 2023.

14.    Specifically, Plaintiff Scott seeks to add as Plaintiffs Kawana Anderson,[2] Tiffany Lockett and Tocashema Williams,[3] and Ahmir Ringo.[4] Each worked as a non-exempt Security Officer for BCI at a Kaiser facility during the Class Period: Anderson from approximately July 2019 through February 2022 in Los Angeles County; Lockett from approximately August 2021 through January 31, 2022 in Riverside County; Williams from approximately June 2021 through January 19, 2022 in Riverside County; and Ringo from approximately April 2021 through September 2021 in Los Angeles County.

15.    The Scott matter, Ringo matter, Lockett/Williams matter, and Anderson matters (collectively, "BCI Wage and Hour Actions") were all brought on behalf of all non-exempt employees of Defendant.

16.    In June 2021, Counsel for Plaintiff Scott and Defendant met telephonically to discuss Plaintiff Scott's claims, her employment, and Defendant's operations. Thereafter, Plaintiff Scott requested, and Defendant

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

---

[2] *Anderson v. Blackstone Consulting, Inc.,* Los Angeles Superior Court Case Nos. 22STCV31450 (Class) and 22SMCV01667 (PAGA).

[3] *Lockett, et al. v. Blackstone Consulting, Inc.*, Riverside Superior Court Case No. CVRI2201443 (Class).

[4] *Ringo v. Blackstone Consulting, Inc.*, Los Angeles Superior Court Case No. 22SMCV00066 (PAGA).

- 9 -

provided, extensive information regarding Defendant's operations.[5] After months of informational exchanges, in October 2021, the Parties agreed to mediate and Plaintiff Scott agreed to limit the scope of the mediation to only Defendant's non-exempt employees who worked at Kaiser facilities and hospitals.

17. For mediation, the Class was defined as all non-exempt employees of Defendant who have worked at a Kaiser facility or hospital in California at any time from May 21, 2017 forward, with aggrieved employees being only those who worked from May 21, 2020 forward. The mediation was initially scheduled for March 24, 2022, but was continued to December 1, 2022 to allow the Parties adequate time to produce and analyze data and documents for mediation. The Parties and Counsel in the Scott, Ringo, Lockett/Williams, and Anderson matters agreed mediation would encompass all of these matters.

18. For mediation, Plaintiff Scott requested, and Defendant produced: the approximate class size, class workweeks, and number of employees separated within the three-year waiting time penalty statute of limitations; a five percent sample of randomly selected payroll records; thousands of pages of corresponding timekeeping records ("shift activity reports"); thousands of wage statements; exemplar completed missed meal and rest period reports and time correction forms; a signed On Duty Meal Period Agreement and Meal Period Waiver for Plaintiff Scott; and all work policies relevant to the claims at issue.[6]

---

[5] Specifically, Defendant provided the number of companies to which it provides employees in California, the number of non-union and union contracts Defendant has with these companies, the number of employees employed by Defendant in California (including the number employed at Kaiser facilities), the different positions its non-exempt employees hold, and that Defendant handles payroll for all its employees. Defendant also produced the Kaiser CBA to which Plaintiff Scott was subject.

[6] Defendant produced: (1) BCI's Healthcare Security – Rest Break and Meal Period Policy, (2) a July 30, 2018 BCI Memorandum regarding Rest Break Policies sent to all California Kaiser Healthcare Non-Exempt ("Hourly") Employees, and (3) the CBAs between Kaiser and BCI for

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

19.     Plaintiff Scott retained a consultant to review the data and prepare a damage model after discussing the claims in detail with Class Counsel.

20.     On December 1, 2022, the Parties attended mediation with Louis Marlin, Esq., an experienced and well-regarded wage and hour class action mediator and reached an agreement in principle, later negotiating the detailed Settlement Agreement offered for Court approval.

21.     The Parties agreed to settle the Actions for the Gross Settlement Amount of $1,000,000 ("GSA"), no part of which may revert to Defendant. SA. ¶ I (24), III (67). The GSA includes, subject to the Court approval: (a) a Class Counsel Fees Payment of not more than one-third of the GSA, or $333,333.33, to compensate Class Counsel for work performed and remaining to be performed in securing final settlement approval (Plaintiffs consented to apportion fees 65% to Cohelan Khoury & Singer LLP; 25% to Lawyers for Justice; and 10% to Diversity Law Group); (b) a Class Counsel Litigation Expenses Payment of not more than $25,000; (c) Class Representative Service Payments of $10,000 to each Plaintiff, for a total of $50,000, for work performed, risks undertaken for Defendant's costs if the case had not successfully concluded, and substantial benefits conferred on absent Settlement Class Members; (d) actual Settlement Administration Expenses not to exceed $15,000[7]; (e) PAGA Payment to the Labor Workforce and Development Agency ("LWDA") of $37,500 (75% of the $50,000 PAGA Penalties); and (f) PAGA Payment of $12,500 to Aggrieved Employees (25% of the $50,000 PAGA Penalties).

---

June 26, 2013 through July 31, 2018 and for November 1, 2018 through October 31, 2023, each of which contained policies regarding wages, overtime, and breaks.

[7] Settlement administration expenses are currently estimated at a discounted flat fee of $12,250. "This is a fixed fee so long as the class size can be accurately represented." Declaration of Julie Green on Behalf of CPT Group, Inc. ("CPT Decl.") ¶ 8.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

22.    A payment of PAGA penalties will be made to the estimated 874 Aggrieved Employees based on the number of pay periods worked during the PAGA Period, whether or not they opt out of the class settlement.

23.    After all Court-approved deductions from the GSA, the remaining "Net Settlement Amount" ("NSA") estimated at $526,666.67 will be distributed to Settlement Class Members (those Class Members who do not opt out). Submission of a claim form is not required.

24.    Each Participating Class Member will receive an Individual Class Payment based on the following calculation: Net Settlement Amount/Total Workweeks Worked = Weekly Rate x Number of Workweeks Worked by Participating Class Member.

25.    The per workweek value of the settlement is: $6.23 ($526,666.67 NSA/84,405 class workweeks). A Class Member who worked the entire Class Period (310 weeks), can expect to receive a total payment of: $1,931.30.

26.    The method of distribution allocates funds based on weeks worked and does not give preference to any Class Member. The information to distribute the Settlement is readily available from BCI's records, and the Administrator can apply the settlement formula fairly and transparently. Settlement payments are allocated one-third to wages, one-third to interest, and one-third to penalties. A W-2 Form will be issued for wages, and a Form 1099 for interest and penalties.

27.    The parties selected CPT Group, Inc. ("CPT") to administer the settlement.

28.    Following preliminary approval, CPT will conduct a search of the National Change of Address database to update Class Member addresses, and mail a Notice of Class Action Settlement ("Class Notice"), Request for Exclusion form, and pre-printed return envelope ("Class Notice Packet") to each member of the Class identified by Defendant's employment records.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 12 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

29.    The proposed Notice advises the Class of the terms of the proposed Settlement and of their right to, and the manner and timing to: (1) participate in the Settlement without submitting a claim; (2) dispute the basis of the Individual Settlement Payment; (3) object; and, (4) opt-out. The Notice informs Class Members of estimated individual payments, release to be given, date of the Final Approval hearing, and how to obtain further information by contacting Class Counsel or CPT.

30.    Here, three out of four factors are met, and the fourth must be evaluated after Class notice is given, post-preliminary approval. <u>First</u>, negotiations remained at arms'-length at all times before and after mediation, which a neutral third-party mediator facilitated. <u>Second</u>, Defendant produced, and Plaintiff and her consultant thoroughly reviewed and analyzed, thousands of pages of relevant timekeeping, payroll, and policy documents to evaluate this action for settlement. <u>Third</u>, Class Counsel Isam C. Khoury, Michael D. Singer, and Rosemary C. Khoury of Cohelan Khoury & Singer, who have significant wage and hour class action experience and have obtained certification and settlement approval in dozens of cases, endorse this settlement; as such, their assessment should be given a presumption of reasonableness.[8]

31.    Defendant's counsel Pankit J. Doshi and Rae Y. Chung, and their firm McDermott Will & Emery LLP, are also knowledgeable, experienced, and capable in wage and hour class action litigation and do not oppose this motion.

32.    "To evaluate the range of possible approval criterion, . . . courts

---

[8] Diversity Law Group, P.C and Lawyers for Justice, PC, who seek to be added to this action via the filing of a Second Amended Complaint for the purpose of processing this settlement, are similarly experienced in wage and hour litigation. Declaration of Max Gavron on behalf of Diversity Law Group, P.C. ("Gavron Decl."), ¶¶ 5-15; Declaration of Joanna Ghosh on behalf of Lawyers for Justice, PC ("Ghosh Decl."), ¶¶ 2-6.

primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hudson v. Libre Tech., Inc.*, 2019 U.S. Dist. LEXIS 196964, *30-31 (S.D. Cal. Nov. 13, 2019) (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009)). Here, the Settlement value is fair and adequate when viewed in light of the risks and delays associated with continued litigation, as explained in detail below. Specifically, through this Settlement, Plaintiff will recover $1,000,000, which represents approximately 85% of the reasonable value of the class claims released ($1,000,000/$1,174,325) and 71% of the reasonable value of the class and PAGA claims released ($1,000,000/$1,414,394).

33.     A settlement is not judged solely against what might have been recovered at trial, nor must a settlement provide 100% of damages sought to be fair and reasonable. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotations and citations omitted) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes…The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."). The proposed settlement value offered here is reasonable and will provide a tangible benefit to the proposed Settlement Class. Each claim's reasonable value is calculated in detail below.

34.     Plaintiff contends Defendant rounded Class Members' time worked to the nearest quarter-hour at the start and end of shifts without informing them of this rounding policy. As a result, Plaintiff contends Defendant failed to pay class members wages for all time worked. Plaintiff's consultant determined that this rounding practice led to approximately 2,384 *net* hours not being compensated, with 5,440 gross hours underpaid and 3,056 overpaid. Assuming half of these net underpaid hours were overtime and half

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 14 -

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

were regular hours, damages were calculated as $56,226 (1,192 hours x $18.87 [regular hourly rate] + 1,192 x $28.30 [overtime rate]). Plaintiff estimated the chance of recovering this amount at 25%, yielding damages of **$14,056**, given the risk this claim would not be certified, *see, e.g. McCarty v. SMG Holdings, I, LLC*, No. 17-cv-06232-JD, 2022 U.S. Dist. LEXIS 57579, at *13 (N.D. Cal. Mar. 29, 2022) (denying certification on nearest quarter-hour rounding claim), or proven at trial, given that Defendant sometimes underpaid and sometimes overpaid wages due to rounding, *see Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1079-80 (9th Cir. 2016) (explaining that a rounding policy is "neutral in application" where "[s]ometimes [the employee] gained minutes and compensation, and sometimes [they] lost minutes and compensation.").

35.    Plaintiff contends Defendant failed to provide legally required uninterrupted and off-duty meal and rest periods or premium wages in lieu of them. *See* Labor Code §§ 512(a), 226.7(b-c); Wage Order 4-2001, §§ 11(A-B), 12(A-B). Specifically, Plaintiff contends that security guard employees were required to remain on premises and on call during rest periods and that time records sampled for all non-exempt employees show missed, late, and short meal periods.

36.    As to rest periods, Defendant argues that its non-exempt security guard employees are exempt under Labor Code section 226, subdivisions (e) and (f) because they are security officers; thus, they can be asked to remain on premises and on call and to carry a communication device during rest periods.

37.    As to meal periods, Defendant argues that its non-exempt security guard employees are exempt from the requirement of Labor Code section 512, subdivision (a) under both Labor Code section 512, subdivisions (e) and (f) and under valid, signed on-duty meal period agreements.

38.    Specifically, Defendant contends Class Members were subject to

- 15 -

a Kaiser CBA which meets all the requirements of Subdivision (e) and that as such they are exempt security officers under Subdivision (f). As to the on-duty meal period agreement argument, Defendant produced signed examples which included a right to revoke at any time; Defendant also explained why the nature of the work prevented off-duty meal periods. *See Lubin v. The Wackenhut Corp.*, 5 Cal. App. 5th 926, 942-43 (2016).

39.    Defendant further contends many of its non-exempt employees employed during the class period signed meal period waivers and produced as an example Plaintiff Scott's signed meal period waiver.

40.    Defendant's final defense, as to all its non-exempt employees, and as to both the meal and rest period claims, is that Plaintiff will not be able to show its non-exempt employees did not *choose* to work during these breaks.

41.    Plaintiff counters that only 87.5% of the class worked in security guard positions to exempt them from meal and rest period provision requirements, but acknowledges the effect meal period waivers may have on potential recovery and the potential issues of proof raised by Defendant.

42.    As to meal periods, Plaintiff's analysis of time records revealed that in an extrapolated 390,000 shifts over 5 hours during the Class Period, approximately 270,000 first meal periods were missed, 27,000 were late, and 14,500 were short (less than thirty minutes). If records show a missed, late, short, or interrupted meal period there is a presumption of liability, which the employer may rebut. *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 77 (2021). Presuming under *Donohue* 311,500 shifts were violative, meal period premium wages of $5,878,005 (311,500 x $18.87) would be at issue. Accounting for Defendant's statutory defenses prevailing as to the security guards reduces this figure by 87.5%, to $734,750. Plaintiff further reduces this figure by 75% to account for Defendant's myriad other defenses discussed above, to **$183,687**.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

43. As to rest periods, because Defendant did not keep any records of rest periods, as is typical, Plaintiff assumed the value of the rest period premium wages claim to be similar to that of the meal period premium claim, at **183,687**. Although there is an additional defense of meal period waiver for the meal period premium wages claim, the rest period premium wages claim has a vulnerability that the meal period claim does not in that there are no records to support a *Donohue*-type presumption. Thus, the claims were assessed to have relatively the same value.

44. An employer must indemnify its employees for all their necessary expenditures or losses incurred in the discharge of their duties. Labor Code § 2802. A reasonable percentage of an employee's cell phone charges, which varies in each case, must be reimbursed. *Cochran v. Schwan's Home Services, Inc.* (2014) 228 Cal. App. 4th 1137, 1145. Plaintiff alleged Defendant failed to reimburse them for the use of personal cell phones to clock in and out for work. Defendant countered that at many locations, non-exempt employees could clock in and out on a physical time clock and the use of a personal cell phone was not required. Presuming that clocking in and out constituted five percent of the total use of employees' personal cell phones, and that a cell phone line cost approximately $100 per month, Plaintiff calculated reimbursement owed at $5 per month. Given that there are 84,405 class Workweeks, this constitutes 19,403 work months (84,405 weeks/4.35 weeks per month), which at $5 per month yields in $97,015 in unreimbursed cell phone expenses. Given Defendant's defenses and that this claim might not be certified[9] or prevail, Plaintiff reduces Defendant's exposure by 50% to

[9] See, e.g., *Dugan v. Ashley Furniture Indus., Inc.*, 2016 U.S. Dist. LEXIS 189011, 2016 WL

- 17 -

Declaration of Isam C. Khoury in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement - Case No. 21CV1470 MMA (KSC)

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

**$48,507**.

45.    Plaintiff contends Defendant's wage statements were non-compliant in each pay period that Defendant failed to report wages earned but not paid. *See Naranjo v. Spectrum Sec. Servs., Inc.*, 13 Cal. 5th 93, 117-119 (2022). Maximum wage statement penalties were calculated as follows, given 73,715 pay periods and 874 employees employed during the one-year statutory period: 874 initial pay periods x $50 + 72,841 subsequent pay periods x $100 = $43,700 + $7,284,100 = $7,327,800. However, given that Plaintiff estimated only a 25% chance of recovery on the underlying wage claims, and that this wage statement claim is derivative of them, Plaintiff reduces this figure by the same amount, to $1,831,950.

46.    Defendant argues it had a good faith belief its rounding policy was not unlawful because it both under- and over- compensated employees in different pay periods. Defendant further contends it believes its employees are exempt from meal and rest period requirements such that it does not owe premium wages. Given these arguments, which Defendant contends are made in good faith, and which might totally preclude liability, Plaintiff further reduces this figure by 75% to **$457,987**.

47.    As to waiting time penalties, Plaintiff contends they are owed to an estimated 496 employees whose employment ended within the three-year statute of limitations period. Maximum exposure of thirty days' wages for these employees is calculated at $2,246,284 (8 hours per day x 30 days x $18.87 per hour[10] x 496 employees). However, in analyzing Defendant's records, Plaintiff's

9173459, at *4 (C.D. Cal. Nov. 29, 2016) (denying certification of cell phone reimbursement claim because "the determination of necessity would require" individual inquiries into factors such as each putative class member's "motivation" in using a personal cell phone). For instance, here, Defendant may argue class members used their cell phones to clock in and out for convenience, not out of necessity.

[10] Plaintiff's consultant derived this average hourly rate of pay from the payroll records Defendant provided in advance of mediation.

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

consultant found that only 51 percent of Class Members were underpaid due to rounding. Plaintiff thus reduces this figure by 49 percent, to $1,145,604. Finally, in recognition of Defendant's purportedly good faith belief that its rounding policy was legal and that it did not owe meal or rest period premiums wages, Plaintiff reduces this figure by 75% to **$286,401**.

48.    For the estimated 73,715 weekly pay periods during the PAGA Period, maximum PAGA penalties were estimated at $24,006,900 for five underlying violations: Secs. 1194, 510 (unpaid wages due to rounding) - $7,371,500 ($100); Sec. 226.7 (unpaid premium wages) –$7,371,500 ($100); Sec. 2802 (unreimbursed business expenses) - $1,842,800 ($100, monthly); Sec. 226 (wage statements)– $7,371,500 ($100); Sec. 203 - $49,600 ($100 for final pay period of 496 separated within SOL).

49.    Penalties were calculated using initial violation rates based on the defense argument that "courts have held that employers are not subject to heightened penalties for subsequent violations unless and until a court or commissioner notifies the employer that it is in violation of the Labor Code." *Vieyara-Flores v. Sika Corp.,* 2019 U.S. Dist. LEXIS 98081, *13 (C.D. Cal. 2019).

50.    From that point, penalties were discounted to one percent of the maximum—or **$240,069**—given the following: first, "California Law is unsettled as to whether PAGA penalties may be stacked" and "courts have gone in different directions" on this issue, per *Merante v. Am. Inst. for Foreign Study, Inc*., 2022 U.S. Dist. LEXIS 131833, *18-19, second, courts have the authority to reduce PAGA penalties from the maximum, as long as not to "zero," per *Thurman v. Bayshore Transit Management, Inc.,* 203 Cal. App. 4th 1112, 1135 (2012); *see also Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (4th DCA) (2018) (trial court's award of $150,000 out of a maximum value of "nearly $70 million" upheld on appeal—representing 0.2%

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 19 -

of the maximum); *Manzo v. Mcdonald's Rests. of Cal., Inc.*, 2022 U.S. Dist. LEXIS 178236, at *19 (E.D. Cal. Sep. 29, 2022) (finding recovery of "less than one percent (1%) of the verdict value" "fair, reasonable, and adequate" where the LWDA did not object and noting "PAGA penalties may be reduced by a court if the amount would be unjust, arbitrary and capricious, or confiscatory" under California Labor Code section 2699, subdivision (e)); third, records revealed rounding only resulted in underpayment in twelve (12) percent of shifts, with rounding resulting in overpayment in seven (7) percent of shifts, and no rounding occurring in the remaining eighty-one (81) percent of shifts; and fourth, Defendant offered significant defenses to the underlying claims, as discussed herein.

51.    As to the allocation of PAGA Penalties from the GSA, $50,000 (or five (5) percent of the GSA) is well within the range accepted by Courts in this Circuit. *See, e.g. Nen Thio v. Genji*, LLC, 14 F. Supp. 3d 1324, 1330 (N.D. Cal. 2014) (approving $10,000 PAGA penalties in settlement $1.25m, or 0.8%); *Franco v. Ruiz Food Prods.*, 2012 U.S. Dist. LEXIS 169057, *5-6 (E.D. Cal. Nov. 27, 2012) (approving $10,000 PAGA penalties in $2.5m settlement, or 0.4%); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 31, 2012) (approving $10,000 PAGA penalties in $3.7m settlement, or 0.3%).

52.    Before final approval, Class Counsel will file a motion for reimbursement of litigation expenses not to exceed $25,000 and for attorneys' fees not to exceed $333,333.33 (one-third of GSA). The motion will detail expenses actually incurred and hours actually expended in this action.

53.    Class Counsel will request $10,000 for Plaintiff Scott for her time, effort, risks undertaken, possible retaliation by potential employers, and for a general release of all claims. Class Counsel will also request $10,000 each for proposed Plaintiffs Anderson, Lockett, Ringo, and Williams for the

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

1  same reasons. *See generally* Declarations of Penny A. Scott, Kawana
2  Anderson, Tiffany Lockett, Ahmir Ringo, and Tocashema Williams. A
3  $10,000 service award is well within the range approved by courts in wage
4  and hour class actions, and should be awarded here. *See, e.g.*, *Singer v.*
5  *Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 at *24-26 (S.D. Cal.
6  June 1, 2010) ("$25,000 incentive award is ... well within the acceptable
7  range awarded in similar cases"); *Glass v. UBS Financial Services*, 2007 U.S.
8  Dist. LEXIS 8476, 50-52 (N.D. Cal. Jan. 26, 2007) (awarding $25,000 class
9  representative payment).

10    54.    With an estimated 1,179 Class Members, joinder is impossible
11  and numerosity is satisfied. See, e.g. *Parker v. Cherne Contracting Corp.*, No.
12  18-cv-01912-HSG, 2020 U.S. Dist. LEXIS 218187, at *16 (N.D. Cal. Nov.
13  20, 2020) ("No precise number establishes numerosity, although even
14  a number larger than 40 generally has been considered sufficient.").

15    55.    Rule 23(a)(2) commonality requirements are "minimal" and
16  "construed permissively." *Hanlon*, 150 F.3d at 1019. Only "a single common
17  question" is required. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359
18  (2011). Plaintiff alleges numerous questions here that are common to all non-
19  exempt employees in the class including: whether they were subject to
20  impermissible time rounding, resulting in unpaid wages; whether they were
21  required to use their personal cell phones to clock in and out, giving rise to
22  unreimbursed business expenses; and whether Defendant's failure to pay
23  wages due to rounding was willful and intentional such that Defendant owes
24  them wage statement and waiting time penalties. Common questions also
25  exist for the approximately 87.5 percent of the class who worked as security
26  guards, including whether they were exempt from the requirements to provide
27  meal and rest periods or premium wages in lieu thereof. Plaintiff contends
28  answering these questions would resolve class-wide issues "in one stroke." *Id.*

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 21 -

at 350.

56.    Under this Rule's "permissive standards," Plaintiff's claims are "typical" if "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. Here, Plaintiffs' claims are typical because they are based on Defendant's uniform practices. *Ventura v. New York City Health and Hosp., Inc.*, 125 F.R.D. 595, 600 (S.D.N.Y. 1989). Specifically, Plaintiff contends Defendant's rounding practice extended to all its non-exempt employees, Plaintiff's meal period damages calculations are based on a *Donohue* analysis of a representative sample of all non-exempt employee's time records, and Plaintiff contends all non-exempt employees were equally likely to have clocked in and out using their personal cell phones.

57.    Adequacy is established when proposed Class Representatives have no conflict of interest with class members and are represented by qualified counsel. *Hanlon*, 150 F.3d at 1020. Plaintiffs have no conflict with the Class, and their counsel are qualified Class Counsel because they are experienced wage and hour class action attorneys fully able to pursue the interests of the Class. See Counsel Declarations of Khoury, Gavron, and Ghosh; Plaintiff Declarations of Scott, Anderson, Lockett, Williams, and Ringo.

58.    Here, predominance is met because Defendant's uniform policies as to rounding and cell phone clock-in procedures without reimbursement for all non-exempt employees, and meal and rest period provision for all non-exempt security guard employees, are being challenged. Further, a class action settlement is superior because of the relatively small potential individual recoveries and because Plaintiff seeks to resolve five actions against BCI involving the same controversy by way of this class action settlement.

59.    On the same date this motion and its exhibits are filed with the Court, they will be served upon Defendant and provided to the Labor and

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

- 22 -

Workforce Development Agency ("LWDA") via the LWDA's website, www.dir.ca.gov/Private-Attorneys-General-Act/Private-Attorneys-General-Act., using the appropriate intake form. Attached as **Exhibit 2** is a true and correct copy of the LWDA confirmation of Receipt.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on May 17, 2023 in San Diego, California.

_s/Isam C. Khoury_____
Isam C. Khoury

## SIGNATURE CERTIFICATION

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures Manual, I hereby certify that the content of this document is acceptable to all signatories herein, and that I have obtained authorization to affix electronic signatures of all signatories to this document.

Dated: May 17, 2023                    **COHELAN KHOURY & SINGER**

By _/s/Rosemary C. Khoury_____
    ROSEMARY C. KHOURY
    Attorneys for Plaintiff
    PENNY A. SCOTT

Declaration of Isam C. Khoury in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement - Case No. 21CV1470 MMA (KSC)

COHELAN KHOURY & SINGER
605 C Street, Suite 200
San Diego, CA 92101

# EXHIBIT 1

## CLASS ACTION AND PAGA SETTLEMENT AGREEMENT

This Class Action and PAGA Settlement Agreement ("Agreement") is made by and between Plaintiffs Penny Scott, Ahmir Ringo, Tiffany Lockett, Tocashema Williams, and Kawana Anderson ("Plaintiffs"), individually and as representatives of the Class, as defined below, and Defendant Blackstone Consulting, Inc. ("Defendant" or "BCI"). This Agreement refers to Plaintiffs and Defendant collectively as "Parties," or individually as "Party." This Agreement is subject to the approval of the Court, and is made for the sole purpose of attempting to consummate settlement of the BCI Wage and Hour Actions, as defined below, on a class-wide basis subject to the following terms and conditions. In the event the Court does not enter an order granting final approval of the Settlement, or the conditions precedent are not met for any reason, this Agreement is void and of no force or effect whatsoever.

### I.    DEFINITIONS

The terms below have the following meaning in this Agreement, in addition to any other terms defined in this Agreement:

1.    "Action(s)" or "BCI Wage and Hour Action(s)" mean the following Class Action and PAGA Complaints that were filed against BCI:

    a.    *Scott v. Blackstone Consulting, Inc.*, Case No. 21-cv-1470-MM, pending in United States District Court, Southern District of California (the "Operative Complaint");

    b.    *Ahmir Ringo v. Blackstone Consulting, Inc., et al.* Case No. 22SMCV00066, pending in Los Angeles Superior Court;

    c.    *Tiffany Lockett and Tocashema Williams v. Blackstone Consulting, Inc.*, Case No. CVRI2201443, pending in Riverside Superior Court;

    d.    *Kawana Anderson v. Blackstone Consulting, Inc.* (PAGA only action), Case No. 22SMCV01667, pending in Los Angeles Superior Court; and

    e.    *Kawana Anderson v. Blackstone Consulting, Inc.* (Class action), Case No. 22STCV31450, pending in Los Angeles Superior Court.

2.    "Administrator" or "Settlement Administrator" means CPT Group, the neutral entity the Parties have agreed to appoint to administer the Settlement.

1

3.     "Administration Expenses Payment" means the amount the Administrator will be paid from the Gross Settlement Amount to reimburse its reasonable fees and expenses in accordance with the Administrator's "not to exceed" bid submitted to the Court in connection with Preliminary Approval of the Settlement.

4.     "Aggrieved Employees" means all non-exempt employees employed by Defendant who worked for Kaiser Permanente facilities and hospitals in California at any time during the PAGA Period.

5.     "Class" or "Putative Class Member" means all individuals who are or previously were employed by Defendant in California as non-exempt employees working at Kaiser Permanente facilities and hospitals in California at any time during the Class Period.

6.     "Class Counsel" means Isam Khoury, Rosemary Khoury, and Michael Singer of Cohelan Khoury & Singer, counsel for the Putative Class for purposes of this Settlement.

7.     "Class Counsel Fees Payment" and "Class Counsel Litigation Expenses Payment" shall mean, subject to Court approval, the amounts to be paid to Class Counsel for attorneys' fees and expenses, respectively, to compensate Class Counsel for their legal work in connection with the Action, including their pre-filing investigation, their filing of the Action, all related litigation activities, all Settlement work, all post-Settlement compliance procedures, and related litigation expenses billed in connection with the Action.

8.     "Class Data" means, for each Class Member, his or her name; last-known mailing address; employee ID; and dates in and out of the Class Period as a Class Member.

9.     "Class Member" or "Putative Class Member" means a member of the Class, as either a Participating Class Member or Non-Participating Class Member (including a Non- Participating Class Member who qualifies as an Aggrieved Employee).

10.    "Class Member Address Search" means the Administrator's investigation and search for current Class Member mailing addresses using all reasonably available sources, methods and means including, but not limited to, the National Change of Address database, skip traces, and direct contact by the Administrator with Class Members.

11.    "Class Notice" means the Court approved Notice of Class Action Settlement and Hearing Date for Final Court Approval, as set forth in the form of Exhibit A

2

attached hereto, or as otherwise approved by the Court, and incorporated by reference into this Agreement.

12. "Class Notice Packet" means the Class Notice to be provided to the Class Members by the Settlement Administrator, to be mailed to Class Members in English in the form set forth as Exhibit A to this Agreement (other than formatting changes to facilitate printing by the Settlement Administrator).

13. "Class Period" means the period from May 21, 2017 to April 30, 2023.

14. "Class Representative" means the named Plaintiffs Penny Scott, Ahmir Ringo, Tiffany Lockett, Tocashema Williams, and Kawana Anderson.

15. "Class Representative Service Payment" means any additional monetary payment provided to Plaintiffs Penny Scott, Ahmir Ringo, Tiffany Lockett, Tocashema Williams, and Kawana Anderson in their capacity as Class Representative in order to compensate them for initiating the Action, performing work in support of the Action, undertaking the risk of liability for Defendant's expenses in the event Plaintiffs were unsuccessful in the prosecution of the Action, and for the general release of all claims by the Plaintiffs.

16. "Court" means the United States District Court, Southern District of California, where the Operative Complaint, as defined below, is pending.

17. "Defendant" means Blackstone Consulting, Inc.

18. "Defendant's Counsel" means McDermott, Will & Emery LLP.

19. "Effective Date" or the date the Settlement shall become "final," shall mean:

   a. In the event that the Settlement has received final approval by the Court and there were no timely objections filed, or that any timely objections have been withdrawn, then upon the passage of the applicable date for any interested party to seek appellate review of the Court's order of final approval of the Settlement without a timely appeal being filed (i.e., 31 days after the final approval order is entered);

   b. In the event that one or more timely objections has/have been filed and not withdrawn, then upon the passage of the applicable date for an objector to seek appellate review of the Court's order of final approval of the Settlement, without a timely appeal having been filed; or

3

c.     In the event that a timely appeal of the Court's order of final approval has been filed, then the Settlement Agreement shall be final when the applicable appellate court has rendered a final decision or opinion affirming the Court's final approval without material modification, and the applicable date for seeking further appellate review has passed.

20.     "Employer's Taxes" means Defendant's share of corporate federal, state and/or local payroll taxes that is owed on the portion of any Participating Class Member's Settlement Share that constitutes wages. The Employer's Taxes shall be separately paid by Defendant and shall not be paid from the Gross Settlement Amount or Net Settlement Amount.

21.     "Final Approval" means the Court's order granting final approval of the Settlement.

22.     "Final Approval Hearing" means the Court's hearing on the Motion for Final Approval of the Settlement.

23.     "Final Judgment" means the Judgment entered by the Court upon Granting Final Approval of the Settlement.

24.     "Gross Settlement Amount" means the agreed upon common fund settlement amount totaling One Million Dollars and Zero Cents ($1,000,000) to be paid by Defendant in full settlement of the Released Claims asserted in this case. This Gross Settlement Amount is an all-in amount without any reversion to Defendant and shall be inclusive of all payments of Settlement Shares to the Participating Class Members, Settlement Administration Expenses, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, Class Representative Service Payments, and the PAGA Payment, and excluding any employer payroll taxes, if any, due on the portion of the Settlement Shares allocated to wages which shall not be paid from the Gross Settlement and shall be the separate additional obligation of Defendant. The Gross Settlement Amount is all in with no reversion to Defendant and shall be paid without the need to submit a claim form.

25.     "Individual Class Payment" means the Participating Class Member's pro rata share of the Net Settlement Amount calculated according to the number of Workweeks worked during the Class Period.

26.     "Individual PAGA Payment" means the Aggrieved Employee's pro rata share of 25% of the PAGA Penalties calculated according to the number of Workweeks worked during the PAGA Period.

4

27. "Judgment" means the Final Approval Order and Judgment entered and approved by the Court, and incorporated by reference into this Agreement.

28. "LWDA" means the California Labor and Workforce Development Agency, the agency entitled, under Labor Code section 2699, subd. (i).

29. "LWDA PAGA Payment" means the 75% of the PAGA Penalties paid to the LWDA under Labor Code section 2699,subd. (i).

30. "Net Settlement Amount" means the Gross Settlement Amount less the Court-approved amounts for the Class Representative Service Payments, the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, the PAGA Payment, and the Settlement Administration Expenses.

31. "Non-Participating Class Member" means any Class Member who opts out of the Settlement by sending the Administrator a valid and timely Request for Exclusion.

32. "Operative Complaint" means the *Scott v. Blackstone Consulting, Inc.* (Case No. 21-cv-1470-MM, pending in United States District Court, Southern District of California), which the Parties will agree to designate as the representative for purposes of this Settlement and in which the Parties will be filing the Motions for Preliminary Approval and Final Approval.

33. "PAGA Pay Period" means any Pay Period during which an Aggrieved Employee worked for Defendant for at least one day during the PAGA Period.

34. "PAGA Period" means the period from May 21, 2020 to April 30, 2023.

35. "PAGA" means the Private Attorneys General Act (Labor Code §§ 2698. et seq.).

36. "PAGA Notice" means Plaintiff's May 21, 2021 letter to BCI and the LWDA providing notice pursuant to Labor Code section 2699.3, subd.(a).

37. "PAGA Penalties" means the total amount of $50,000.00, which will be from the Gross Settlement Amount as PAGA civil penalties. PAGA Penalties will be allocated 25% to the Aggrieved Employees ($12,500.00) and 75% to LWDA ($37,500.00) in settlement of PAGA claims.

38. "Participating Class Member" means a Class Member who does not submit a valid and timely Request for Exclusion and who will have released the Released Claims.

5

39.    "Plaintiff(s)" means Penny Scott, Ahmir Ringo, Tiffany Lockett, Tocashema Williams, and Kawana Anderson, the named Plaintiffs in the Action.

40.    "Preliminary Approval of the Settlement" or "Preliminary Approval" means the Court's Order Granting Preliminary Approval of the Settlement as approved by the Court, and incorporated by this reference into this Agreement.

41.    "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval and Approval of Class and PAGA Settlement.

42.    "Released Class Claims" means the claims being released as described in Section V below.

43.    "Released PAGA Claims" means the claims being released as described in Section V below.

44.    "Released Parties" collectively mean: Defendant BCI and each of its past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and their respective successors and predecessors in interest, subsidiaries, affiliates, parent companies and attorneys, and/or any individual or entity which could be jointly liable with Defendant.

45.    "Request for Exclusion" or "Opt Out" means a Class Member's submission of a written request to be excluded from the Class Settlement signed by the Class Member.

46.    "Response Deadline" means the forty-five (45) calendar days following the date on which the Settlement Administrator first mails the Class Notice Packet to the Class Members.

47.    "Settlement" means the settlement between the Parties, which is memorialized in this Agreement and subject to approval by the Court.

48.    "Settlement Administrator" means the third-party settlement administrator proposed by the Parties, as approved by the Court.

49.    "Settlement Administrator Costs" means the third-party settlement administrator proposed by the Parties, as approved by the Court.

50.    "Settlement Share" means each Participating Class Member's share of the Net Settlement Amount as provided by this Agreement.

6

51.    "Workweek" means any week during which a Class Member worked for BCI for at least one day during the Class Period.

## II.    RECITALS

52.    On May 21, 2021, Plaintiff Penny Scott filed a wage and hour class action against Defendant in the Superior Court of the State of California, County of San Diego (Case No. 37-2021-00022564-CU-OE-CTL) (the "*Scott* matter"). On July 21, 2021, Plaintiff Scott filed an Amended Complaint. Plaintiff Scott asserted the following claims against Defendant:

a.    Failure to Pay Minimum, Regular and Overtime Wages in Violation of California Labor Code §§ 204, 510, 1194, 1194.2, 1197 & 1198;

b.    Failure to Provide Meal Periods in Violation of California Labor Code §§ 226.7 and 512 and §11 of the Applicable IWC Wage Order;

c.    Failure to Provide Rest Periods in Violation of California Labor Code § 226.7 and §12 of the Applicable IWC Wage Order;

d.    Failure to Provide Accurate Itemized Wage Statements in Violation of California Labor Code §§ 226 and 1174;

e.    Failure to Pay Vacation Wages in Violation of California Labor Code § 227.3;

f.    Failure to Pay Wages Timely to Separated Employees in Violation of California Labor Code §§ 201-203;

g.    Failure to Reimburse Business Expenses in Violation of California Labor Code §§ 2802 and 2804;

h.    Violation of the Unfair Competition Law under the California Business and Professions Code § 17200 *et seq.*

i.    PAGA Civil Penalties for Failure to Pay Minimum, Regular and Overtime Wages;

j.    PAGA Civil Penalties for Failure to Provide Meal Periods;

k.    PAGA Civil Penalties for Failure to Provide Rest Periods;

7

l.      PAGA Civil Penalties for Failure to Provide Accurate Itemized Wage Statements;

m.    PAGA Civil Penalties for Failure to Maintain Accurate Records;

n.     PAGA Civil Penalties for Failure to Provide Vacation Wages;

o.     PAGA Civil Penalties for Failure to Timely Pay Wages Due During Employment and Upon Separation from Employment; and

p.     PAGA Civil Penalties for Failure to Reimburse Business Expenses.

53.    On August 18, 2021, Defendant removed the *Scott* matter to the United States District Court, Southern District of California. The *Scott* matter is currently pending before the Hon. Michael M. Anello (Case No. Case No. 21-cv-1470-MMA).

54.    On January 18, 2022, Plaintiff Ahmir Ringo filed a PAGA action against Defendant in the Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV00066) (the "*Ringo* matter"). Plaintiff Ringo asserted the following claims against Defendant:

a.     PAGA Civil Penalties for Failure to Pay Overtime;

b.     PAGA Civil Penalties for Failure to Provide Meal Periods;

c.     PAGA Civil Penalties for Failure to Provide Rest Periods;

d.     PAGA Civil Penalties for Failure to Pay Minimum Wages;

e.     PAGA Civil Penalties for Failure to Timely Pay Wages Upon Termination;

f.     PAGA Civil Penalties for Failure to Pay Wages During Employment;

g.     PAGA Civil Penalties for Failure to Provide Complete and Accurate Wage Statements;

h.     PAGA Civil Penalties for Failure to Keep Complete and Accurate Payroll Records; and

i.     PAGA Civil Penalties for Failure to Reimburse Necessary Business-Related Expenses and Costs.

8

55.    On March 23, 2022, Defendant removed the *Ringo* matter to the United States
District Court, Central District of California. On May 3, 2022, the Central District
Court remanded the *Ringo* matter back to the state court.

56.    On April 8, 2022, Plaintiffs Tiffany Lockett and Tocashema Williams filed a wage
and hour class action against Defendant in the Superior Court of the State of
California, County of Riverside (Case No. CVRI2201443) (the "*Lockett/Williams*
matter"). Plaintiffs Lockett and Williams asserted the following claims against
Defendant:

   a.    Failure to Pay Minimum Wages in Violation of California Labor Code §§
1194, 1197 & 1197.1;

   b.    Failure to Pay Overtime Wages in Violation of California Labor Code §§
510, 558, and 1194

   c.    Failure to Reimburse Business Expenses in Violation of California Labor
Code § 2802;

   d.    Failure to Provide Meal Periods in Violation of California Labor Code §§
226.7 and 512;

   e.    Failure to Provide Rest Periods in Violation of California Labor Code §
226.7;

   f.    Failure to Provide Accurate Itemized Wage Statements in Violation of
California Labor Code § 226(a); and

   g.    Violation of the Unfair Competition Law under the California Business and
Professions Code § 17200 *et seq.*

57.    On May 17, 2022, Defendant removed the *Lockett/Williams* matter to the United
States District Court, Central District of California. On June 2, 2022, the Central
District court remanded the *Lockett/Williams* matter back to state court.

58.    On September 26, 2022, Plaintiff Kawana Anderson filed a wage and hour class
action against Defendant in the Superior Court of the State of California, County of
Los Angeles (Case No. 22STCV31450) (the "*Anderson* Class Action matter").
Plaintiff Anderson asserted the following claims against Defendant:

   a.    Failure to Pay Overtime in Violation of California Labor Code §§ 510 and
1198;

9

b.     Failure to Provide Meal Breaks in Violation of California Labor Code §§ 226.7 and 512(a);

c.     Failure to Provide Rest Breaks in Violation of California Labor Code § 226.7;

d.     Failure to Pay Minimum Wages in Violation of California Labor Code §§ 1194, 1197, and 1197.1;

e.     Failure to Pay Final Wages in Violation of California Labor Code §§ 201 and 202;

f.     Failure to Timely Pay Wages During Employment in Violation of California Labor Code § 204;

g.     Non-Complaint Wage Statements in Violation of California Labor Code § 226(a);

h.     Failure to Keep Requisite Payroll Records in Violation of California Labor Code § 1174(d);

i.     Failure to Reimburse Business Expenses in Violation of California Labor Code §§ 2800 and 2802; and

j.     Violation of the Unfair Competition Law under the California Business and Professions Code § 17200 *et seq.*

59.     On September 26, 2022, Plaintiff Kawana Anderson separately filed a PAGA action against Defendant in the Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV01667) (the "*Anderson* PAGA Action matter"). Plaintiff Anderson asserted the following claims against Defendant:

a.     PAGA Civil Penalties for Failure to Pay Overtime;

b.     PAGA Civil Penalties for Failure to Provide Meal Periods;

c.     PAGA Civil Penalties for Failure to Provide Rest Periods;

d.     PAGA Civil Penalties for Failure to Pay Minimum Wages;

e.     PAGA Civil Penalties for Failure to Timely Pay Wages Upon Termination;

f.     PAGA Civil Penalties for Failure to Pay Wages During Employment;

DM_US 195081459-1.113482.0012



g.    PAGA Civil Penalties for Failure to Provide Complete and Accurate Wage Statements;

h.    PAGA Civil Penalties for Failure to Keep Complete and Accurate Payroll Records; and

i.    PAGA Civil Penalties for Failure to Reimburse Necessary Business-Related Expenses and Costs.

60.    BCI denies all the allegations in the BCI Wage and Hour Actions, denies any failure to comply with the laws identified in the BCI Wage and Hour Actions, and denies any and all liability for the causes of action alleged. Specifically, Defendant contends that Plaintiffs and the Class Members were properly compensated for wages under California law; that Defendant provided meal and rest breaks in compliance with California law; that Defendant did not fail to pay to Plaintiffs or any Class Members any required expense reimbursement; that Defendant complied with California wage statement requirements; that Defendant is not liable for any of the penalties claimed or that could be claimed in the BCI Wage and Hour Actions; and that the BCI Wage and Hour Actions cannot be maintained as a class action or PAGA action.

61.    Pursuant to California Labor Code section 2699.3, subd. (a), Plaintiffs gave timely written notice to BCI and the LWDA by sending the PAGA notices.

62.    On December 1, 2022, the Parties participated in an all-day mediation presided over by Louis Marlin, a respected mediator of wage and hour representative and class actions. During the mediation, each side, represented by their respective counsel, was able to agree to settle the BCI Wage and Hour Actions, which was memorialized in the form of a Memorandum of Understanding. This Agreement replaces and supersedes the Memorandum of Understanding and any other agreements, understandings, or representations between the Parties

63.    Prior to mediation, Plaintiffs obtained, through informal discovery, class data, including payroll records and time records for a sampling of class members and named Plaintiffs, Defendant's employment handbook and various policies, and the applicable collective bargaining agreement. Plaintiffs' investigation was sufficient to satisfy the criteria for court approval set forth in *Dunk v. Foot Locker Retail, Inc.* (1996) 48 Cal.App.4th 1794, 1801 and *Kullar v. Foot Locker Retail, Inc.* (2008) 168 Cal.App.4th 116, 129-130 ("*Dunk/Kullar*").

64.    This Court has not granted class certification. No other courts have granted class certification on any of the BCI Wage and Hour Actions.

11

65. The Parties, Class Counsel and Defense Counsel represent that they are not aware of any other pending matter or action asserting claims that will be extinguished or affected by the Settlement.

66. The Parties believe this Agreement constitutes a fair, adequate, and reasonable settlement of the Action and have arrived at this Agreement in arms-length negotiations, taking into account all relevant factors, present and potential, and will so represent to the Court. This Agreement also represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or will be construed as an admission by Defendant that the claims in the BCI Wage and Hour Actions of Plaintiffs or the Class have merit or that Defendant bears any liability to Plaintiffs or the Class on those claims or any other claims, or as an admission by Plaintiffs that Defendant's defenses in the BCI Wage and Hour Actions of have merit. The Parties agree to certification of the Class for purposes of this Settlement only. If for any reason the Settlement does not become effective, Defendant reserves the right to contest certification and/or decertification of any Class for any reason and reserves all available defenses to the claims in the BCI Wage and Hour Actions.

Based on these Recitals that are a part of this Agreement, the Parties agree as follows:

## III.  MONETARY TERMS.

67. **Gross Settlement Amount ("GSA").** Except as otherwise provided by Section VII below, Defendant promises to pay One Million Dollars and Zero Cents ($1,000,000.00) and no more as the Gross Settlement Amount. This amount is all-inclusive of all payments contemplated in this Settlement, excluding any employer-side payroll taxes on the portion of the Settlement Shares allocated to wages which shall be separately paid by Defendant to the Settlement Administrator. Defendant has no obligation to pay the Gross Settlement Amount (or any payroll taxes) prior to the deadline stated in Section IV of this Agreement. The Settlement Administrator will disburse the entire Gross Settlement Amount without asking or requiring Participating Class Members or Aggrieved Employees to submit any claim as a condition of payment. None of the Gross Settlement Amount will revert to Defendant. The Gross Settlement Amount and other actions and forbearances taken by Defendant shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (a) the Released Claims, (b) Class Counsel Fees Payment, (c) the Class Counsel Litigation Expenses Payment, (d) the Settlement Administration Expenses, (e) the Class Representative Service Payment, (f) the PAGA payment, and (g) any other obligation of Defendant under

12

this Agreement (other than the Employer's Taxes on the portion of the Net Settlement Amount allocated to the payment of wages).

68.    **Payments from the Gross Settlement Amount.**  The Administrator will make and deduct the following payments from the Gross Settlement Amount, in the amounts specified by the Court in the Final Approval:

a.    **To Plaintiffs:**  In addition to the Settlement Shares to be paid to Plaintiffs, Plaintiffs will apply to the Court for an award of not more than Ten Thousand Dollars and Zero Cents ($10,000.00) each as Class Representative Service Payments, which is a combined total of Fifty Thousand Dollars and Zero Cents ($50,000) in Class Representative Service Payments, in addition to any Individual Class Payment the Class Representatives are entitled to receive as Participating Class Members. Defendant will not oppose Plaintiffs' request for a Class Representative Service Payment that does not exceed this amount. As part of the motion for Class Counsel Fees Payment and Class Litigation Expenses Payment, Plaintiff Scott and Class Counsel will seek Court approval for any Class Representative Service Payments no later than 16 court days prior to the Final Approval Hearing. If the Court approves a Class Representative Service Payment less than the amount requested, the Settlement Administrator will retain the remainder in the Net Settlement Amount. The Settlement Administrator will pay the Class Representative Service Payment using IRS Form 1099. Plaintiffs assume full responsibility and liability for employee taxes owed on the Class Representative Service Payment and shall hold Defendant harmless from any and all liability with regard thereto.

b.    **To Class Counsel:**  Class Counsel will apply to the Court for an award of a Class Counsel Fees Payment of not more than One-Third of the Gross Settlement Amount, or approximately $333,333.33, and a Class Counsel Litigation Expenses Payment of not more than $25,000.00. Defendant will not oppose requests for these payments provided that they do not exceed these amounts. Plaintiff Scott and/or Class Counsel will file a motion for Class Counsel Fees Payment and Class Litigation Expenses Payment no later than 16 court days prior to the Final Approval Hearing. If the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Settlement Administrator will allocate the remainder to the Net Settlement Amount. Released Parties shall have no liability to Class Counsel or any other Plaintiff's Counsel arising from any claim to any portion of any Class

13

Counsel Fee Payment and/or Class Counsel Litigation Expenses Payment. The Settlement Administrator will pay the Class Counsel Fees Payment and Class Counsel Expenses Payment using one or more IRS 1099 Forms. Class Counsel assumes full responsibility and liability for taxes owed on the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment and holds Defendant harmless, and indemnifies Defendant, from any dispute or controversy regarding any division or sharing of any of these Payments. The payment of the Class Counsel Fees Payment shall be made as follows: 65% to Cohelan Khoury & Singer LLP; 25% to Lawyers for Justice; and 10% to Diversity Law Group. Payment of Class Counsel Litigation Expenses Payment shall be made to the firm that incurred the expenses.

c. **The PAGA Payment.** The Parties will seek approval from the Court for the PAGA Payment of $50,000.00 out of the Gross Settlement Amount, which shall be allocated 75% ($37,500.00) to the LWDA as the LWDA's share of the settlement of civil penalties paid under this Agreement pursuant to the PAGA, and 25% ($12,500.00) will be distributed to the Aggrieved Employees based on their respective pay periods worked during the PAGA Period for a release of the Released PAGA Claims that occurred during the PAGA Period. If the Court approves a PAGA Payment of less than $50,000.00, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members. All Aggrieved Employees will be sent their share of the PAGA Payment and will be subject to the release of the Released PAGA Claims as set forth below, whether or not they opt out of the Settlement. One hundred percent (100%) of the PAGA Payment is in settlement of claims for penalties and not be subject to wage withholdings, and shall be reported on IRS Form 1099. In the event the LWDA or the Court rejects this allocation, the Parties will meet and confer to reach a penalty allocation acceptable to all Parties that does not materially alter the terms of the Settlement, nor require Defendant to pay more than the Gross Settlement Amount.

d. **To the Settlement Administrator.** The Settlement Administrator will pay out of the Gross Settlement Amount to itself its reasonable fees and expenses that are documented and approved by the Court in an amount not to exceed $15,000.00 ("Settlement Administration Expenses"). To the extent the Settlement Administration Expenses that are documented and approved by the Court are less than $15,000.00, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members.

69.  **Payments from the Net Settlement Amount.**  The Net Settlement Amount shall include the following payments after the deductions have been made from the Gross Settlement Amount as described in this Agreement.  The Net Settlement Amount shall include the following:

a.  **Settlement Share.**  Subject to the terms and conditions of this Agreement, the Settlement Administrator will pay a Settlement Share from the Net Settlement Amount to each Participating Class Member.  The submission of a claim form is not required to be paid.

b.  **To Each Participating Class Member.**  Each Participating Class Member will be entitled, provisionally, to a share or shares of the Net Settlement Amount.  The Settlement Share for each Participating Class Member will be calculated as follows: (i) Defendant shall provide the Settlement Administrator with the Class Data; (ii) the Settlement Administrator shall then divide the Net Settlement Amount by the total number of workweeks included in the dates of employment to determine a dollar amount per week ("Weekly Rate"); and (iii) the Settlement Administrator shall then take the total number of Workweeks worked by all Participating Class Members during the Class Period and multiply it by the Weekly Rate to calculate their Settlement Share.

    i.  **Tax Allocation of Individual Class Payments.**  Subject to approval by the Court, One-Third of each Participating Class Member's Settlement Share is in the settlement of wage claims (the "Wage Portion").  Accordingly, the Wage Portion is subject to wage withholdings, and shall be reported on IRS Form W-2 and shall be paid from the Gross Settlement Amount.  The Settlement Administrator shall be responsible for remitting to the tax authorities employees' and employer's share of all payroll taxes on the Wage Portion.  Subject to approval by the Court, One-Third of each Participating Class Member's Settlement Share is in settlement of claims for interest, and One-Third of each Participating Class Member's Settlement Share is in settlement of claims for penalties allegedly due to employees (collectively the "Non-Wage Portion").  The Non-Wage Portion shall not be subject to wage withholdings, and shall be reported on IRS Form 1099.

    ii.  **Effect of Non-Participating Class Members on Calculation of Individual Class Payments.**  Non-Participating Class Members will not receive any Individual Class Payments.  The Settlement

15

Administrator will retain amounts equal to their Individual Class
Payments in the Net Settlement Amount for distribution to
Participating Class Members on a *pro rata* basis.

c.  **To the LWDA and Aggrieved Employees.** PAGA Penalties in the amount
of $50,000.00 to be paid from the Gross Settlement Amount, with 75%
($37,500.00) allocated to the LWDA PAGA Payment and 25% ($12,500.0)
allocated to the Individual PAGA Payments.

i.  The Settlement Administrator will calculate each Individual PAGA
Payment by (a) dividing the amount of the Aggrieved Employees'
25% share of PAGA Penalties of $50,000.00 by the total number of
PAGA Period Pay Periods worked by all Aggrieved Employees
during the PAGA Period and (b) multiplying the result by each
Aggrieved Employee's PAGA Period Pay Periods. Aggrieved
Employees assume full responsibility and liability for any taxes owed
on their Individual PAGA Payment. If the Court approves PAGA
Penalties of less than the amount requested, the Administrator will
allocate the remainder to the Net Settlement Amount. The
Administrator will report the Individual PAGA Payments on IRS 1099
Forms.

## IV.  SETTLEMENT FUNDING AND PAYMENTS.

70.  **Payments from the Gross Settlement Amount.** The Administrator will make and
deduct the following payments from the Gross Settlement Amount, in the amounts
specified by the Court in the Final Approval:

71.  **Class Workweeks and Aggrieved Employee Pay Periods.** Based on a review of
its records as of December 31, 2022, Defendant estimates there are 1,179— Class
Members who collectively worked a total of 84,405 Workweeks, and 874 of
Aggrieved Employees who worked a total 73,715 of PAGA Pay Periods.

72.  **Class Data.** Not later than 30 court days after the Court grants Preliminary
Approval of the Settlement, Defendant will simultaneously deliver the Class Data
to the Settlement Administrator, in the form of a Microsoft Excel spreadsheet. To
protect Class Members' privacy rights, the Settlement Administrator must maintain
the Class Data in confidence, use the Class Data only for purposes of this Settlement
and for no other purpose, and restrict access to the Class Data to Settlement
Administrator's employees who need access to the Class Data to effect and perform
under this Agreement. Defendant has a continuing duty to immediately notify Class
Counsel if it discovers that the Class Data omitted class member identifying

16

information and to provide corrected or updated Class Data as soon as reasonably feasible. The Parties and their counsel will expeditiously use best efforts, in good faith, to reconstruct or otherwise resolve any issues related to missing or omitted Class Data.

73. **Funding of Gross Settlement Amount.** Defendant shall fully fund the Gross Settlement Amount, and also fund the amounts necessary to fully pay Defendant's share of payroll taxes by transmitting the funds to the Settlement Administrator no later than 30 court days after the Effective Date.

74. **Payments from the Gross Settlement Amount.** Within 14 calendar days after Defendant funds the Gross Settlement Amount, the Settlement Administrator will mail checks for all Individual Class Payments, all Individual PAGA Payments, the LWDA PAGA Payment, the Administration Expenses Payment, the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment, and the Class Representative Service Payment. Disbursement of the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment and the Class Representative Service Payment shall not precede disbursement of Individual Class Payments and Individual PAGA Payments.

    a. The Settlement Administrator will issue checks for the Individual Class Payments and/or Individual PAGA Payments and send them to the Class Members via First Class U.S. Mail, postage prepaid. The face of each check shall prominently state the date (not less than 180 calendar days after the date of mailing) when the check will be voided. The Settlement Administrator will cancel all checks not cashed by the void date. The Settlement Administrator will send checks for Individual Settlement Payments to all Participating Class Members (including those for whom Class Notice was returned undelivered). The Administrator will send checks for Individual PAGA Payments to all Aggrieved Employees including Non-Participating Class Members who qualify as Aggrieved Employees (including those for whom Class Notice was returned undelivered). The Settlement Administrator may send Participating Class Members a single check combining the Individual Class Payment and the Individual PAGA Payment. Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database.

    b. The Settlement Administrator must conduct a Class Member Address Search for all other Class Members whose checks are returned as undelivered without USPS forwarding address. Within 7 calendar days of

17



receiving a returned check, the Settlement Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Class Member Address Search. The Settlement Administrator need not take further steps to deliver checks to Class Members whose re-mailed checks are returned as undelivered. The Administrator shall promptly send a replacement check to any Class Member whose original check was lost or misplaced, requested by the Class Member prior to the void date.

c.      For any Class Member whose Individual Class Payment check or Individual PAGA Payment check is uncashed and canceled after the void date, the Settlement Administrator shall transmit the funds represented by such checks to Legal Aid at Work in the name of the Class Member thereby leaving no "unpaid residue" subject to the requirements of California Code of Civil Procedure Section 384, subd. (b) ("Cy Pres Recipient"). The Parties, Class Counsel and Defense Counsel represent that they have no interest or relationship, financial or otherwise, with the intended Cy Pres Recipient.

d.      The payment of Individual Class Payments and Individual PAGA Payments shall not obligate Defendant to confer any additional benefits or make any additional payments to Class Members (such as 401(k) contributions or bonuses) beyond those specified in this Agreement.

**V.    RELEASES OF CLAIMS.** Effective on the date when Defendant fully funds the entire Gross Settlement Amount and funds all employer payroll taxes owed on the Wage Portion of the Individual Class Payments, Plaintiff, Class Members, and Class Counsel will release claims against all Released Parties as follows:

75.    **Plaintiffs' Release.** Upon the Effective Date, Plaintiffs and their respective former and present spouses, representatives, agents, attorneys, heirs, administrators, successors, and assigns generally, release and discharge Released Parties from all claims, transactions, or occurrences that occurred during the Class Period, including, but not limited to: (a) all claims that were, or reasonably could have been, alleged, based on the facts contained, in the BCI Wage and Hour Actions, relating to the payment or non-payment of wages and alleging violations of federal, state or local law or administrative order, such as the Industrial Welfare Commission Wage Orders and California Labor Code sections 201, 202, 203, 204, 226, 226.2, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, and 2802 and Business and Professions Code sections 17200 *et seq.*, including the failure to pay wages for hours worked, minimum wage claims, overtime claims, regular rate claims, meal break violations,

18

rest break violations, waiting time penalties, wage statement claims, failure to provide vacation wages, failure to reimburse business expense claims, and Unfair Competition Law violations ("Release Class Claims"); and (b) all PAGA claims that were, or reasonably could have been, alleged based on facts contained in the BCI Wage and Hour Actions, and Plaintiffs' PAGA Notices, relating to PAGA penalties in violation of Cal. Labor Code §§ 2698, *et seq.* ("Released PAGA Claims") and any other claims whatsoever that were alleged in this Action or which arise out of or directly or indirectly relate to such facts alleged in this Action, including without limitation all related claims for restitution and other equitable relief, conversion, liquidated damages, punitive damages and any other related claims and/or penalties of any nature whatsoever (collectively, the "Released Claims"). Further, Plaintiffs shall forever release, discharge and agree to hold harmless the Released Parties from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorney fees and costs), known or unknown, at law or in equity, which they had or may now have against Defendant arising out of or in any way connected with their employment with Defendant, including the Released Class Claims and Release PAGA Claims, and any and all transactions, occurrences, or matters between the Parties. Without limiting the generality of the foregoing, this release shall include, but not be limited to, any and all claims under the (a) Americans With Disabilities Act, as amended; (b) Title VII of the Civil Rights Act of 1964, as amended; (c) the Civil Rights Act of 1991; (d) 42 U.S.C. § 1981, as amended; (e) the Age Discrimination in Employment Act, as amended; (f) the Fair Labor Standards Act, as amended; (g) the Equal Pay Act; (h) the Employee Retirement Income Security Act, as amended; (i) the Consolidated Omnibus Budget Reconciliation Act; (j) the Rehabilitation Act of 1973; (k) the Family and Medical Leave Act; (l) the Civil Rights Act of 1966; (m) the California Fair Employment and Housing Act; (n) the California Constitution; (o) the California Labor Code; (p) the California Government Code; (q) the California Civil Code; and (r) any and all other federal, state and local statutes, ordinances, regulations, rules and other laws, and any and all claims based on constitutional, statutory, common law or regulatory grounds as well as any other claims based on theories of wrongful or constructive discharge, breach of contract or implied contract, fraud, misrepresentation, promissory estoppel or intentional and/or negligent infliction of emotional distress, or damages under any other federal, state or local statutes, ordinances, regulations, rules or laws. This release is for any and all relief, no matter how denominated, including, but not limited to, back pay, front pay, vacation pay, bonuses, compensatory damages, tortious damages, liquidated damages, punitive damages, damages for pain and suffering, and attorney fees and costs, and Plaintiffs forever release, discharge and agree to hold harmless Defendant and the Released Parties from any

19



and all claims for attorney fees and costs arising out of the matters released in this Agreement. Plaintiffs' Release does not extend to any claims or actions to enforce this Agreement, or to any claims for vested benefits, unemployment benefits, disability benefits, social security benefits, workers' compensation benefits that arose at any time, or based on occurrences outside the Class Period.

a.    **Plaintiffs' Waiver of Rights Under California Civil Code Section 1542.** For purposes of Plaintiffs' Release, Plaintiffs expressly waive and relinquish the provisions, rights, and benefits, if any, of section 1542 of the California Civil Code, which reads:

**A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or Released Party.**

Plaintiffs, being aware of Section 1542, shall expressly waive and relinquish all rights and benefits they may have under Section 1542 as well as any other statutes or common law principles of a similar effect. Plaintiffs may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of all the claims referenced herein, but stipulates and agree that, upon the Effective Date, Plaintiffs shall fully, finally and forever settle and release any and all claims against the Released Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, that were asserted or could have been asserted upon any theory of law or equity without regard to the subsequent discovery of the existence of such different or additional facts.

76.    **Release by Participating Class Members**. Upon the Effective Date, each Participating Class Member shall release Defendant and the Released Parties, and each of them, from the Released Class Claims. Each Participating Class Member will be bound to the release of Released Class Claims as a result of the Settlement and to the terms of the final judgment and the satisfaction of such judgment. It is understood and agreed that this Agreement will not release any person, party or entity from claims, if any, by Class Members for workers' compensation, unemployment, or disability benefits of any nature, nor does it release any claims, actions, or causes of action which may be possessed by Class Members under state or federal discrimination statutes, including, without limitation, the Cal. Fair Employment and Housing Act, the Cal. Government Code § 12940, *et seq.*; the Unruh Civil Rights Act, the Cal. Civil Code §51, *et seq.*; the California

20

Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*; the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.*; the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.*; and all of their implementing regulations and interpretive guidelines, or any other law which cannot be lawfully released. Class Members who do not opt out will be deemed to have acknowledged and agreed that their claims for wages and/or penalties in the Action are undisputed, and that the Settlement payments constitute payment of all sums allegedly due to them. Class Members will be deemed to have acknowledged and agreed that California Labor Code Section 206.5 is not applicable to the Settlement payments. That section provides, in pertinent part, as follows:

> **An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made.**

77. **Release by Non-Participating Class Members Who Are Aggrieved Employees.** All Non-Participating Class Members who are Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from the Released PAGA Claims, or all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the BCI Wage and Hour Actions and the PAGA Notice.

78. **Class Counsel.** As of the Effective Date, and except as otherwise provided by this Agreement and the Judgment, Class Counsel and any counsel associated with Class Counsel, including other counsel of the named Plaintiffs, waive any claim to costs and attorneys' fees and expenses against Defendant arising from or related to the Action.

79. **State of California.** As of the date the Defendant fully funds the Gross Settlement Amount, Defendant shall receive a release from the State of California of all Released PAGA Claims for civil penalties under California Labor Code Sections 2698 *et. seq.*, predicated on the violations of the applicable California Labor Code sections and applicable Wage Orders as alleged in the LWDA Notices submitted by the named Plaintiffs which occurred during the PAGA Period. The Released PAGA Claims may be released against all Released Parties. The Released PAGA Claims exclude any PAGA claims outside the PAGA Period. The release of the Released PAGA Claims shall be effective as to all Aggrieved Employees, regardless of whether an Aggrieved Employee submitted a request for an exclusion

21

from the Class. The Released PAGA Claims do not include other PAGA claims, underlying wage and hour claims, claims for wrongful termination, discrimination, unemployment insurance, disability and worker's compensation, and claims outside of the PAGA Period.

## VI.    MOTION FOR PRELIMINARY APPROVAL.

80.    **Motion for Preliminary Approval.** After the execution of this Settlement Agreement, Plaintiff Penny Scott and Class Counsel will file a Motion for Preliminary Approval with the Court for an order granting Preliminary Approval of the Settlement, setting a date for the Final Approval Hearing, and approving the Class Notice (the "Motion for Preliminary Approval"). Any disagreement among the Parties concerning the Class Notice, the proposed orders, or other documents necessary to implement the Settlement will be referred to the mediator for resolution.

a.    At the hearing on the Motion for Preliminary Approval, the Parties will jointly appear, support the granting of the Motion for Preliminary Approval, and submit an Order Granting Preliminary Approval of the Settlement in the form approved by the Court and incorporated by reference into this Agreement.

b.    Should the Court decline to preliminarily approve material aspects of the Settlement (including but not limited to the scope of release to be granted by Participating Class Members or the binding effect of the Settlement on Participating Class Members), the Parties shall work together in good faith to address any concerns raised by the Court and propose a revised Settlement for the Court's approval.

c.    **Defendant's Declaration in Support of Preliminary Approval.** Within 5 court days before Plaintiff's filing of the Motion for Preliminary Approval, Defendant will prepare and deliver to Class Counsel a signed Declaration from Defendant and Defense Counsel disclosing all facts relevant to any actual or potential conflicts of interest with the Settlement Administrator and Cy Pres Recipient. In their Declarations, Defense Counsel and Defendant shall aver that they are not aware of any other pending matter or action asserting claims that will be extinguished or adversely affected by the Settlement.

d.    **Plaintiffs' Responsibilities.** Plaintiffs and Class Counsel will prepare and deliver to Defense Counsel all documents necessary for obtaining Preliminary Approval, including: (i) a draft of the notice, and memorandum

22

in support, of the Motion for Preliminary Approval that includes an analysis of the Settlement under *Dunk/Kullar* and a request for approval of the PAGA Settlement under Labor Code Section 2699, subd. (f)(2)); (ii) a draft proposed Order Granting Preliminary Approval and Approval of PAGA Settlement; (iii) a draft proposed Class Notice; (iv) a signed declaration from the Settlement Administrator attaching its "not to exceed" bid for administering the Settlement and attesting to its willingness to serve; competency; operative procedures for protecting the security of Class Data; amounts of insurance coverage for any data breach, defalcation of funds or other misfeasance; all facts relevant to any actual or potential conflicts of interest with Class Members and/or the proposed Cy Pres; and the nature and extent of any financial relationship with Plaintiffs, Class Counsel or Defense Counsel; (v) a signed declaration from Plaintiffs confirming willingness and competency to serve and disclosing all facts relevant to any actual or potential conflicts of interest with Class Members, the Settlement Administrator and/or the proposed Cy Pres; (v) a signed declaration from each Class Counsel firm attesting to its competency to represent the Class Members; its timely transmission to the LWDA of all necessary PAGA documents (initial notice of violations (Labor Code section 2699.3, subd. (a)), Operative Complaints (Labor Code section 2699, subd. (l)(1)), this Agreement (Labor Code section 2699, subd. (l)(2)); and (vi) all facts relevant to any actual or potential conflict of interest with Class Members, the Settlement Administrator and/or the Cy Pres Recipient. In their Declarations, Plaintiffs and Class Counsel Declaration shall aver that they are not aware of any other pending matter or action asserting claims that will be extinguished or adversely affected by the Settlement. Plaintiff shall provide drafts of these documents to Defense Counsel not later than 7 calendar days prior to filing the Motion for Preliminary Approval.

e.  **Responsibilities of Counsel.** Class Counsel and Defense Counsel are jointly responsible for expeditiously finalizing and filing the Motion for Preliminary Approval no later than 30 calendar days after the full execution of this Agreement; obtaining a prompt hearing date for the Motion for Preliminary Approval; and for appearing in Court to advocate in favor of the Motion for Preliminary Approval. Class Counsel is responsible for delivering the Court's Preliminary Approval to the Settlement Administrator.

f.  **Duty to Cooperate.** If the Parties disagree on any aspect of the proposed Motion for Preliminary Approval and/or the supporting declarations and documents, Class Counsel and Defense Counsel will expeditiously work

23

together on behalf of the Parties by meeting in person or by telephone, and in good faith, to resolve the disagreement. If the Court does not grant Preliminary Approval or conditions Preliminary Approval on any material change to this Agreement, Class Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns.

## VII. SETTLEMENT ADMINISTRATION.

81. **Selection of Settlement Administrator.** The Parties have jointly selected to serve as the Settlement Administrator and verified that, as a condition of appointment, CPT Groupagrees to be bound by this Agreement and to perform, as a fiduciary, all duties specified in this Agreement in exchange for payment of Administration Expenses. The Parties and their Counsel represent that they have no interest or relationship, financial or otherwise, with the Administrator other than a professional relationship arising out of prior experiences administering settlements.

82. **Employer Identification Number.** The Settlement Administrator shall have and use its own Employer Identification Number for purposes of calculating payroll tax withholdings and providing reports state and federal tax authorities.

83. **Qualified Settlement Fund.** The Settlement Administrator shall establish a settlement fund that meets the requirements of a Qualified Settlement Fund ("QSF") under US Treasury Regulation section 468B-1.

84. **Notice to Class Members.** No later than three (3) business days after receipt of the Class Data, the Settlement Administrator shall notify Class Counsel that the list has been received and state the number of Class Members, PAGA Members, Workweeks, and Pay Periods in the Class Data.

   a. Using best efforts to perform as soon as possible, and in no event later than 14 calendar days after receiving the Class Data, the Settlement Administrator will send to all Class Members identified in the Class Data, via first-class United States Postal Service ("USPS") mail, the Class Notice Packet, including the Class Notice (with Spanish translation, if applicable), substantially in the form attached to this Agreement as Exhibit A. The first page of the Class Notice shall prominently estimate the dollar amounts of any Individual Class Payment and/or Individual PAGA Payment payable to the Class Member, and the number of Workweeks and PAGA Pay Periods (if applicable) used to calculate these amounts. Before mailing Class Notice

24

Packets, the Administrator shall update Class Member addresses using the National Change of Address database.

b.    Not later than 3 business days after the Settlement Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Settlement Administrator shall re-mail the Class Notice using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Settlement Administrator shall conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. The Settlement Administrator has no obligation to make further attempts to locate or send Class Notice to Class Members whose Class Notice is returned by the USPS a second time.

c.    The deadlines for Class Members' written objections, Challenges to Workweeks and/or Pay Periods, and Requests for Exclusion will be extended an additional 14 calendar days beyond the 45 calendar days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed. The Settlement Administrator will inform the Class Member of the extended deadline with the re-mailed Class Notice.

d.    If the Settlement Administrator, Defendant or Class Counsel is contacted by or otherwise discovers any persons who believe they should have been included in the Class Data and should have received Class Notice Packets, the Parties will expeditiously meet and confer in person or by telephone, and in good faith, in an effort to agree on whether to include them as Class Members. If the Parties agree, such persons will be Class Members entitled to the same rights as other Class Members, and the Settlement Administrator will send, via email or overnight delivery, a Class Notice requiring them to exercise options under this Agreement not later than 14 days after receipt of Class Notice, or the deadline dates in the Class Notice, whichever is later.

85.    **Requests for Exclusion (Opt-Outs).** Class Members who wish to exclude themselves (i.e. opt-out of) the Class Settlement must send the Settlement Administrator, by fax, email, or mail, a signed written Request for Exclusion not later than 45 calendar days after the Administrator mails the Class Notice (plus an additional 14 calendar days for Class Members whose Class Notice is re-mailed). A Request for Exclusion is a letter from a Class Member or his/her representative that reasonably communicates the Class Member's election to be excluded from the Settlement and includes the Class Member's name, address and email address or

25

telephone number. To be valid, a Request for Exclusion must be timely faxed, emailed, or postmarked by the Response Deadline.

a.  The Settlement Administrator may not reject a Request for Exclusion as invalid because it fails to contain all the information specified in the Class Notice. The Administrator shall accept any Request for Exclusion as valid if the Administrator can reasonably ascertain the identity of the person as a Class Member and the Class Member's desire to be excluded. The Administrator's determination shall be final and not appealable or otherwise susceptible to challenge. If the Administrator has reason to question the authenticity of a Request for Exclusion, the Administrator may demand additional proof of the Class Member's identity. The Administrator's determination of authenticity shall be final and not appealable or otherwise susceptible to challenge.

b.  Every Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under this Agreement, entitled to all benefits and bound by all terms and conditions of the Settlement, including the Participating Class Members' Releases under Section V of this Agreement, regardless whether the Participating Class Member actually receives the Class Notice or objects to the Settlement.

c.  Every Class Member who submits a valid and timely Request for Exclusion is a Non-Participating Class Member and shall not receive an Individual Class Payment or have the right to object to the class action components of the Settlement. Because future PAGA claims are subject to claim preclusion upon entry of the Judgment, Non-Participating Class Members who are Aggrieved Employees are deemed to release the claims identified in Section V of this Agreement and are eligible for an Individual PAGA Payment.

86.  **Challenges to Calculation of Workweeks.** Each Class Member shall have 45 calendar days after the Settlement Administrator mails the Class Notice (plus an additional 14 calendar days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Workweeks and PAGA Pay Periods (if any) allocated to the Class Member in the Class Notice. The Class Member may challenge the allocation by communicating with the Settlement Administrator via fax, email or mail. The Settlement Administrator must encourage the challenging Class Member to submit supporting documentation. In the absence of any contrary documentation, the Settlement Administrator is entitled to presume that the Workweeks contained in the Class Notice are correct so long as they are consistent

26

with the Class Data. The Settlement Administrator's determination of each Class Member's allocation of Workweeks and/or Pay Periods shall be final and not appealable or otherwise susceptible to challenge. The Settlement Administrator shall promptly provide copies of all challenges to calculation of Workweeks and/or Pay Periods to Defense Counsel and Class Counsel and the Settlement Administrator's determination of the challenges.

87.    **Objections to Settlement.** Only Participating Class Members may object to the class action components of the Settlement and/or this Agreement, including contesting the fairness of the Settlement, and/or amounts requested for the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or Class Representative Service Payment.

a.    Participating Class Members may send written objections to the Settlement Administrator, by fax, email, or mail. In the alternative, Participating Class Members may appear in Court (or hire an attorney to appear in Court) to present verbal objections at the Final Approval Hearing. A Participating Class Member who elects to send a written objection to the Administrator must do so not later than 45 calendar days after the Settlement Administrator's mailing of the Class Notice (plus an additional 14 calendar days for Class Members whose Class Notice was re-mailed).

b.    Non-Participating Class Members have no right to object to any of the class action components of the Settlement.

88.    **Settlement Administrator Duties.** The Settlement Administrator has a duty to perform or observe all tasks to be performed or observed by the Settlement Administrator contained in this Agreement or otherwise.

a.    **Website, Email Address and Toll-Free Number.** The Settlement Administrator will establish and maintain and use an internet website to post information of interest to Class Members including the date, time and location for the Final Approval Hearing and copies of the Settlement Agreement, Motion for Preliminary Approval, the Preliminary Approval, the Class Notice, the Motion for Final Approval, the Motion for Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and Class Representative Service Payment, the Final Approval and the Judgment. The Settlement Administrator will also maintain and monitor an email address and a toll-free telephone number to receive Class Member calls, faxes and emails.

27

b. **Requests for Exclusion (Opt-outs) and Exclusion List.** The Administrator will promptly review on a rolling basis Requests for Exclusion to ascertain their validity. Not later than 5 calendar days after the expiration of the deadline for submitting Requests for Exclusion, the Administrator shall email a list to Class Counsel and Defense Counsel containing (a) the names and other identifying information of Class Members who have timely submitted valid Requests for Exclusion ("Exclusion List"); (b) the names and other identifying information of Class Members who have submitted invalid Requests for Exclusion; (c) copies of all Requests for Exclusion from Settlement submitted (whether valid or invalid.

c. **Weekly Reports.** The Settlement Administrator must, on a weekly basis, provide written reports to Class Counsel and Defense Counsel that, among other things, tally the number of: Class Notices mailed or re-mailed, Class Notices returned undelivered, Requests for Exclusion (whether valid or invalid) received, objections received, challenges to Workweeks and/or Pay Periods received and/or resolved, and checks mailed for Individual Class Payments and Individual PAGA Payments ("Weekly Report"). The Weekly Reports must include and provide the Settlement Administrator's assessment of the validity of Requests for Exclusion and attach copies of all Requests for Exclusion and objections received.

d. **Workweek and/or Pay Period Challenges.** The Administrator has the authority to address and make final decisions consistent with the terms of this Agreement on all Class Member challenges over the calculation of Workweeks and/or Pay Periods. The Administrator's decision shall be final and not appealable or otherwise susceptible to challenge.

89. **Settlement Administrator's Declaration.** Not later than 14 calendar days before the date by which Plaintiff is required to file the Motion for Final Approval of the Settlement, the Settlement Administrator will provide to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under this Agreement, including, but not limited to, its mailing of Class Notice, the Class Notices returned as undelivered, the re-mailing of Class Notices, attempts to locate Class Members, the total number of Requests for Exclusion from Settlement it received (both valid or invalid), the number of written objections and attach the Exclusion List. The Settlement Administrator will supplement its declaration as needed or requested by the Parties and/or the Court. Class Counsel is responsible for filing the Settlement Administrator's declaration(s) in Court.

28



90. **Final Report by Settlement Administrator.** Within 10 calendar days after the Settlement Administrator disburses all funds in the Gross Settlement Amount, the Settlement Administrator will provide Class Counsel and Defense Counsel with a final report detailing its disbursements by employee identification number only of all payments made under this Agreement. At least 15 calendar days before any deadline set by the Court, the Settlement Administrator will prepare, and submit to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its disbursement of all payments required under this Agreement. Class Counsel is responsible for filing the Settlement Administrator's declaration in Court.

## VIII. CLASS SIZE.

91. **Class Size Estimate.** Based on its records, Defendant represents that, as of December 31, 2022, there are (1) 1,179 Class Members and 84,405 Total Workweeks during the Class period and (2) 874 Aggrieved Employees who worked 73,715 Pay Periods during the PAGA Period.

92. **Class Size Modification.** In the event that the number of workweeks of the Class Members exceeds more than ten percent (10%) of the workweeks set forth in Paragraph 75, then Defendant shall have the right to choose between the following two options: (1) increase the Gross Settlement Amount proportionally for each additional Settlement Class Member above the ten percent (10%) threshold; or (2) scale back the end of the Class Period such that there will be no more than 92,845 workweeks (approximately 10% more than 84,405) included in the Settlement.

## IX. DEFENDANT'S RIGHT TO WITHDRAW.

If the number of valid Requests for Exclusion identified in the Exclusion List exceeds 5% of the total of all Class Members, Defendant may, but is not obligated, elect to withdraw from the Settlement. The Parties agree that, if Defendant withdraws, the Settlement shall be void ab initio, have no force or effect whatsoever, and that neither Party will have any further obligation to perform under this Agreement; provided, however, Defendant will remain responsible for paying all Settlement Administration Expenses incurred to that point. Defendant must notify the Class Counsel and the Court of its election to withdraw not later than 7 court days after the Administrator sends the final Exclusion List to Defense Counsel; late elections will have no effect.

## X. MOTION FOR FINAL APPROVAL.

Not later than 16 court days before the calendared Final Approval Hearing, Plaintiff will file in Court, a motion for final approval of the Settlement that includes a request for approval of the PAGA settlement under Labor Code section 2699, subd. (l), a Proposed Final Approval Order and a proposed Judgment (collectively "Motion for Final Approval"). Plaintiff shall provide drafts of these documents to Defense Counsel not later than 7



calendar days prior to filing the Motion for Final Approval. Class Counsel and Defense Counsel will expeditiously meet and confer in person or by telephone, and in good faith, to resolve any disagreements concerning the Motion for Final Approval.

93. **Response to Objections.** Each Party retains the right to respond to any objection raised by a Participating Class Member, including the right to file responsive documents in Court no later than 5 court days prior to the Final Approval Hearing, or as otherwise ordered or accepted by the Court.

94. **Duty to Cooperate.** If the Court does not grant Final Approval or conditions Final Approval on any material change to the Settlement (including, but not limited to, the scope of release to be granted by Class Members), the Parties will expeditiously work together in good faith to address the Court's concerns by revising the Agreement as necessary to obtain Final Approval. The Court's decision to award less than the amounts requested for the Class Representative Service Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment and/or Administrator Expenses Payment shall not constitute a material modification to the Agreement within the meaning of this paragraph.

95. **Continuing Jurisdiction of the Court.** The Parties agree that, after entry of Judgment, the Court will retain jurisdiction over the Parties, Action, and the Settlement solely for purposes of (i) enforcing this Agreement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law.

96. **Waiver of Right to Appeal.** Provided the Judgment is consistent with the terms and conditions of this Agreement, specifically including the Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment reflected set forth in this Settlement, the Parties, their respective counsel, and all Participating Class Members who did not object to the Settlement as provided in this Agreement, waive all rights to appeal from the Judgment, including all rights to post-judgment and appellate proceedings, the right to file motions to vacate judgment, motions for new trial, extraordinary writs, and appeals. The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals. If an objector appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Net Settlement Amount.

97. **Appellate Court Orders to Vacate, Reverse, or Materially Modify Judgment.** If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that

30



requires a material modification of this Agreement (including, but not limited to, the scope of release to be granted by Class Members), this Agreement shall be null and void. The Parties shall nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain Final Approval and entry of Judgment, sharing, on a 50-50 basis, any additional Administration Expenses reasonably incurred after remittitur. An appellate decision to vacate, reverse, or modify the Court's award of the Class Representative Service Payment or any payments to Class Counsel shall not constitute a material modification of the Judgment within the meaning of this paragraph, as long as the Gross Settlement Amount remains unchanged.

**XI.    REQUEST FOR DISMISSAL.** All Parties, including all named Plaintiffs and their respective counsel, will cooperate in taking necessary steps to have the Settlement approved in the Court and request for dismissal of each BCI Wage and Hour Action in their respective court. For the purposes of this Agreement, the Parties jointly agree to the following and agree not to object to any Court filings consistent with this Agreement:

98.    Within 30 calendar days of the Effective Date, Plaintiff Ringo will file a request to dismiss with prejudice in *Ahmir Ringo v. Blackstone Consulting, Inc., et al.* Case No. 22SMCV00066, pending in Los Angeles Superior Court.

99.    Within 30 calendar days of the Effective Date, Plaintiffs Lockett and Williams will file a request to dismiss with prejudice in *Tiffany Lockett and Tocashema Williams v. Blackstone Consulting, Inc.*, Case No. CVRI2201443, pending in Riverside Superior Court.

100.    Within 30 calendar days of the Effective Date, Plaintiff Kawana Anderson will file a request to dismiss with prejudice in *Kawana Anderson v. Blackstone Consulting, Inc.* (PAGA only action), Case No. 22SMCV01667, pending in Los Angeles Superior Court.

101.    Within 30 calendar days of the Effective Date, Plaintiff Kawana Anderson will file a request to dismiss with prejudice in *Kawana Anderson v. Blackstone Consulting, Inc.* (Class action), Case No. 22STCV31450, pending in Los Angeles Superior Court.

**XII.    AMENDED JUDGMENT.** If any amended judgment is required under Code of Civil Procedure section 384, the Parties will work together in good faith to jointly submit and a proposed amended judgment Approval.

31

## XIII.  ADDITIONAL PROVISIONS.

102.  **No Admission of Liability, Class Certification or Representative Manageability for Other Purposes.** This Agreement represents a compromise and settlement of highly disputed claims. Nothing in this Agreement is intended or should be construed as an admission by Defendant that any of the allegations in the Operative Complaint or the BCI Wage and Hour Actions have merit or that Defendant has any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiff that Defendant's defenses in the Action have merit. The Parties agree that class certification and representative treatment are for purposes of this Settlement only. If, for any reason, the Court does grant Preliminary Approval, Final Approval or enter Judgment, Defendant reserves the right to contest certification of any class for any reasons, and Defendant reserves all available defenses to the claims in the BCI Wage and Hour Actions, and Plaintiff reserves the right to move for class certification on any grounds available and to contest Defendant's defenses. The Settlement, this Agreement and Parties' willingness to settle the BCI Wage and Hour Actions will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and this Agreement).

103.  **Confidentiality Prior to Preliminary Approval.** Plaintiff, Class Counsel, Defendant and Defense Counsel separately agree that, until the Motion for Preliminary Approval of Settlement is filed, they and each of them will not disclose, disseminate and/or publicize, or cause or permit another person to disclose, disseminate or publicize, any of the terms of the Agreement directly or indirectly, specifically or generally, to any person, corporation, association, government agency, or other entity except: (1) to the Parties' attorneys, accountants, or spouses, all of whom will be instructed to keep this Agreement confidential; (2) counsel in a related matter; (3) to the extent necessary to report income to appropriate taxing authorities; (4) in response to a court order or subpoena; or (5) in response to an inquiry or subpoena issued by a state or federal government agency. Each Party agrees to immediately notify the other Party of any judicial or agency order, inquiry, or subpoena seeking such information. Plaintiff, Class Counsel, Defendant and Defense Counsel separately agree not to, directly or indirectly, initiate any conversation or other communication, before the filing of the Motion for Preliminary Approval, with any third party regarding this Agreement or the matters giving rise to this Agreement except to respond only that "the matter was resolved," or words to that effect. This paragraph does not restrict Class Counsel's communications with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

32

104. **No Solicitation.** The Parties separately agree that they and their respective counsel and employees will not solicit any Class Member to opt out of or object to the Settlement, or appeal from the Judgment. Nothing in this paragraph shall be construed to restrict Class Counsel's ability to communicate with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

105. **Integrated Agreement.** Upon execution by all Parties and their counsel, this Agreement together with its attached exhibits shall constitute the entire agreement between the Parties relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

106. **Attorney Authorization.** Class Counsel and Defense Counsel separately warrant and represent that they are authorized by Plaintiff and Defendant, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including any amendments to this Agreement.

107. **Cooperation.** The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Settlement Agreement, submitting supplemental evidence and supplementing points and authorities as requested by the Court. In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that may become necessary to implement the Settlement, the Parties will seek the assistance of a mediator for resolution.

108. **No Prior Assignments.** The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

109. **No Tax Advice.** Neither Plaintiff, Class Counsel, Defendant nor Defense Counsel are providing any advice regarding taxes or taxability, nor shall anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

110. **Modification of Agreement.** This Agreement, and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their representatives, and approved by the Court.

111. **Agreement Binding on Successors.** This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

112. **Applicable Law.** All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the internal laws of the state of California, without regard to conflict of law principles.

113. **Cooperation in Drafting.** The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

114. **Confidentiality.** To the extent permitted by law, all agreements made, and orders entered during Action and in this Agreement relating to the confidentiality of information shall survive the execution of this Agreement.

115. **Use and Return of Class Data.** Information provided to Class Counsel pursuant to Cal. Evid. Code §1152, and all copies and summaries of the Class Data provided to Class Counsel by Defendant in connection with the mediation, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule of court. Not later than 90 calendar days after the date when the Court discharges the Settlement Administrator's obligation to provide a Declaration confirming the final payout of all Settlement funds, Plaintiff shall destroy, all paper and electronic versions of Class Data received from Defendant unless, prior to the Court's discharge of the Administrator's obligation, Defendant makes a written request to Class Counsel for the return, rather than the destructions, of Class Data.

116. **Headings.** The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

117. **Calendar Days.** Unless otherwise noted, all reference to "days" in this Agreement shall be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline shall be on the first business day thereafter.

118. **Notice.** All notices, demands or other communications between the Parties in connection with this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, or the day sent by email or messenger, addressed as follows:

34



**To Plaintiffs:**
Isam C. Khoury
ikhoury@ckslaw.com
Michael D. Singer
msinger@ckslaw.com
Rosemary C. Khoury
Rkhoury@ckslaw.com
**Cohelan Khoury & Singer**
605 C Street Suite 200
San Diego, CA 92101
T: 619-595-3001
F: 619-595-3000
Attorneys for Penny Scott

**To Defendant:**
Pankit Doshi
pdoshi@mwe.com
Rae Chung
rchung@mwe.com
**McDermott Will & Emery LLP**
415 Mission Street, Suite 5600
San Francisco, CA 94105
Attorneys for Blackstone Consulting, Inc.

119. **Execution in Counterparts.** This Agreement may be executed in one or more counterparts by facsimile, electronically (i.e. DocuSign), or email which for purposes of this Agreement shall be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

120. **Stay of Litigation.** The Parties agree that upon the execution of this Agreement the litigation shall be stayed, except to effectuate the terms of this Agreement. The Parties further agree that upon the signing of this Agreement that pursuant to CCP section 583.330 to extend the date to bring a case to trial under CCP section 583.310 for the entire period of this settlement process.

DM_US 195081459-1.113482.0012



## XIV.    EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated: 3/23/2023          _____
                         Plaintiff Penny Scott


Dated: _____          _____
                         Plaintiff Tiffany Lockett


Dated: _____          _____
                         Plaintiff  Tocashema Williams


Dated: _____          _____
                         Plaintiff Ahmir Ringo


Dated: _____          _____
                         Plaintiff Kawana Anderson


Dated: _____          _____
                         Joe Blackstone
                         For Defendant Blackstone Consulting, Inc.


Dated: 3/23/2023          _____
                         Isam C. Khoury
                         Michael D. Singer
                         Rosemary Khoury
                         Cohelan Khoury & Singer
                         Attorney for Plaintiff Penny Scott


Dated: _____          _____
                         Larry W. Lee
                         Max W. Gavron
                         Diversity Law Group, P.C.
                         Attorney for Plaintiffs Tiffany Lockett & Tocashema

36

## XIV.   EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.


Dated: _____     _____
                      Plaintiff Penny Scott


Dated: 3/23/2023      _____
                      Plaintiff Tiffany Lockett


Dated: 3/23/2023      _____
                      Plaintiff Tocashema Williams


Dated: _____     _____
                      Plaintiff Ahmir Ringo


Dated: _____     _____
                      Plaintiff Kawana Anderson


Dated: _____     _____
                      Joe Blackstone
                      For Defendant Blackstone Consulting, Inc.


Dated: _____     _____
                      Isam C. Khoury
                      Michael D. Singer
                      Rosemary Khoury
                      Cohelan Khoury & Singer
                      Attorney for Plaintiff Penny Scott


Dated: 3/23/2023      _____
                      Larry W. Lee
                      Max W. Gavron
                      Diversity Law Group, P.C.
                      Attorney for Plaintiffs Tiffany Lockett & Tocashema

36

## XIV.  EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated: _____          _____
                            Plaintiff Penny Scott


Dated: _____          _____
                            Plaintiff Tiffany Lockett


Dated: _____          _____
                            Plaintiff  Tocashema Williams

Dated: 03/23/2023           UCC 1-308
_____                 All Rights Reserved Without Prejudice
                            _____
                            Plaintiff Ahmir Ringo


Dated: _____          _____
                            Plaintiff Kawana Anderson


Dated: _____          _____
                            Joe Blackstone
                            For Defendant Blackstone Consulting, Inc.


Dated: _____          _____
                            Isam C. Khoury
                            Michael D. Singer
                            Rosemary Khoury
                            Cohelan Khoury & Singer
                            Attorney for Plaintiff Penny Scott


Dated: _____          _____
                            Larry W. Lee
                            Max W. Gavron
                            Diversity Law Group, P.C.
                            Attorney for Plaintiffs Tiffany Lockett & Tocashema

36

## XIV.   EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.


Dated: _____          _____
                            *Plaintiff Penny Scott*


Dated: _____          _____
                            *Plaintiff Tiffany Lockett*


Dated: _____          _____
                            *Plaintiff  Tocashema Williams*


Dated: _____          _____
                            *Plaintiff Ahmir Ringo*


Dated: 03/24/2023           _____
                            *Plaintiff Kawana Anderson*


Dated: _____          _____
                            Joe Blackstone
                            For Defendant Blackstone Consulting, Inc.


Dated: _____          _____
                            Isam C. Khoury
                            Michael D. Singer
                            Rosemary Khoury
                            Cohelan Khoury & Singer
                            Attorney for Plaintiff Penny Scott


Dated: _____          _____
                            Larry W. Lee
                            Max W. Gavron
                            Diversity Law Group, P.C.
                            Attorney for Plaintiffs Tiffany Lockett & Tocashema

36

## XIV.  EXECUTION BY PARTIES AND COUNSEL

The Parties and their counsel hereby execute this Agreement.

Dated: _____    _____
                     Plaintiff Penny Scott

Dated: _____    _____
                     Plaintiff Tiffany Lockett

Dated: _____    _____
                     Plaintiff  Tocashema Williams

Dated: _____    _____
                     Plaintiff Ahmir Ringo

Dated: _____    _____
                     Plaintiff Kawana Anderson

Dated: 3/31/23       _____
                     Joe Blackstone
                     For Defendant Blackstone Consulting, Inc.

Dated: _____    _____
                     Isam C. Khoury
                     Michael D. Singer
                     Rosemary Khoury
                     Cohelan Khoury & Singer
                     Attorney for Plaintiff Penny Scott

Dated: _____    _____
                     Larry W. Lee
                     Max W. Gavron
                     Diversity Law Group, P.C.
                     Attorney for Plaintiffs Tiffany Lockett & Tocashema

36

Dated: <u>March 24, 2023</u> _____

       Edwin Aiwazian
       Lawyers for Justice, PC
       Attorney for Plaintiffs Ahmir Ringo & Kawana Anderson


Dated: _____ _____

       Pankit Doshi
       Rae Chung
       McDermott, Will & Emery
       Attorney for Defendant

Dated: _____          _____
                              Edwin Aiwazian
                              Lawyers for Justice, PC
                              Attorney for Plaintiffs Ahmir Ringo & Kawana Anderson


Dated: 4/5/2023               _____
                              Pankit Doshi
                              Rae Chung
                              McDermott, Will & Emery
                              Attorney for Defendant

DM_US 195081459-1.113482.0012



**EXHIBIT A**

[NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION AND HEARING DATE FOR FINAL COURT APPROVAL]

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION
AND HEARING DATE FOR FINAL COURT APPROVAL**

***Scott v. Blackstone Consulting, Inc.,*** **United States District Court, Southern District of California** (**Case No. 21-cv-1470-MM**) (the "Representative Matter")

And the "Related Matters":

- *Ahmir Ringo v. Blackstone Consulting, Inc., et al*., Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV00066);
- *Tiffany Lockett and Tocashema Williams v. Blackstone Consulting, Inc.*, Superior Court of the State of California, County of Riverside (Case No. CVRI2201443);
- *Kawana Anderson v. Blackstone Consulting, Inc*. (PAGA only action), Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV01667); and
- *Kawana Anderson v. Blackstone Consulting, Inc*. (Class action), Superior Court of the State of California, County of Los Angeles (Case No. 22STCV31450).

The Representative Matter and the Related Matters are hereinafter collectively referred to as the "BCI Wage and Hour Actions."

**YOU ARE ELIGIBLE TO RECEIVE A SETTLEMENT PAYMENT.**

**PLEASE READ THIS NOTICE CAREFULLY.**

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **Do Nothing and Receive a Payment** | If you do nothing, you will receive your share of the cash payment from the Settlement in exchange of the release of all claims.<br><br>**Your estimated Settlement Share is: $<<___>>. See the explanation in Section 5 below**.<br><br>After final approval by the Court, the payment will be mailed to you at the same address as this notice.  In exchange for the settlement payment, you will release claims against the Defendant as detailed in Section 4 below.  If your address has changed, you must notify the Settlement Administrator as explained in Section 6 below. |
| **Exclude Yourself** | To exclude yourself, you must fill out a Request for Exclusion (attached hereto as Exhibit A) and send a copy of the completed Request for Exclusion to the Settlement Administrator as provided below.  **If you request exclusion, you will receive no money from the Settlement.  However, if you are an Aggrieved Employee who requests exclusion, you will still receive a small amount as your share of the PAGA Payment described below**.<br><br>Instructions are set forth in Section 7 below. |
| **Object** | **If you believe that the Settlement should not be finally approved by the Court for any reason, you may object to the proposed** |

| | **Settlement, the attorneys' fees, the costs and/or the service awards, either in writing to the Settlement Administrator.** |
| --- | --- |
| | Class Members who file a written objection may appear at the Final Approval Hearing to make an oral objection. |
| | Detailed instructions are provided in Section 8 below. |

## 1.    Why did I get this Notice?

A proposed class action settlement (the "Settlement") of the Representative Matter pending in the United States District Court, Southern District of California (the "Court") and the Related Matters has been reached between Plaintiffs Penny Scott; Ahmir Ringo; Tiffany Lockett; Tocashema Williams; and Kawana Anderson ("Plaintiffs") and Defendant Blackstone Consulting, Inc. ("Defendant" or "BCI"). The Court has granted preliminary approval of the Settlement and ordered this Notice be sent to you because you may be entitled to money under the Settlement and because the Settlement affects your legal rights.

You have received this Class Notice because you have been identified as a member of the Class ("Class Member"), which is defined as:

> All individuals who are or previously were employed by Defendant in California as non-exempt employees working at Kaiser Permanente facilities and hospitals in California at any time during the Class Period.

The Class Period for means the period from May 21, 2027 to April 30, 2023.

This Class Notice explains the BCI Wage and Hour Actions, the Settlement, and your legal rights.  It is important that you read this Class Notice carefully as your rights may be affected by the Settlement.

## 2.    What is This Notice About?

**Representative Matter:** On May 21, 2021, Plaintiff Penny Scott filed a wage and hour class action against Defendant in the Superior Court of the State of California, County of San Diego (Case No. 37-2021-00022564-CU-OE-CTL) (the "*Scott* matter" or the "Representative Matter"). On August 18, 2021, Defendant removed the *Scott* matter to the United States District Court, Southern District of California.  The *Scott* matter is currently pending before the Hon. Michael M. Anello (Case No. Case No. 21-cv-1470-MMA.

**Related Matters:** On January 18, 2022, Plaintiff Ahmir Ringo filed a PAGA action against Defendant in the Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV00066) (the "*Ringo* matter"). On April 8, 2022, Plaintiffs Tiffany Lockett and Tocashema Williams filed a wage and hour class action against Defendant in the Superior Court of the State of California, County of Riverside (Case No. CVRI2201443) (the "*Lockett/Williams* matter"). On September 26, 2022, Plaintiff Kawana Anderson filed a wage and hour class action against Defendant in the Superior Court of the State of California, County of Los Angeles (Case No. 22STCV31450) (the "*Anderson* Class Action matter"). On September 26, 2022, Plaintiff

Kawana Anderson separately filed a PAGA action against Defendant in the Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV01667) (the "*Anderson* PAGA Action matter").

Plaintiffs Penny Scott; Ahmir Ringo; Tiffany Lockett; Tocashema Williams; and Kawana Anderson collectively asserted claims that Defendant: (1) failed to pay minimum, regular and overtime wages in violation of California Labor Code§§ 204, 510, 1194, 1194.2, 1197 & 1198; (2) failed to provide meal periods in violation of California Labor Code §§ 226.7 and 512; (3) failed to provide rest periods in violation of California Labor Code § 226.7; (4) failed to provide accurate itemized wage statements in violation of California Labor Code §§ 226 and 1174; (5) failed to provide vacation wages in violation of California Labor Code § 227.3; (6) failed to provide timely wages to separated employees in violation of California Labor Code §§ 201-203; (7) failed to reimburse employees for required expenses in violation of California Labor Code § 2802; (8) violated California Business and Professions Code § 17200 et seq.;  and (9) violated the Private Attorney General Act, Cal. Labor Code §§ 2698, et seq. ("PAGA").

Defendant denies and disputes all of Plaintiffs' claims. Specifically, Defendant contends that Plaintiffs and the Class Members were properly compensated for wages under California law; that Defendant provided meal and rest breaks in compliance with California law; that Defendant did not fail to pay to Plaintiffs or any Class Members any required expense reimbursement; that Defendant complied with California wage statement requirements; that Defendant is not liable for any of the penalties claimed or that could be claimed in the BCI Wage and Hour Actions; and that the BCI Wage and Hour Actions cannot be maintained as a class action or PAGA action.

The Court has not decided whether Defendant or Plaintiffs are correct. Plaintiffs would have still had to prove their claims at a trial on a class-wide basis. However, to avoid additional expense, inconvenience, and risks of continued litigation, the Parties have concluded that it is in their respective best interests and the interests of the Class Members to settle the BCI Wage and Hour Actions on the terms summarized in this Notice. The Settlement was reached after arms-length non-collusive negotiations between the Parties. In these negotiations, both sides recognized the substantial risk of the Court deciding against them at trial and determined that the Settlement was a fair, reasonable and adequate way to resolve the disputed claims.

Plaintiff and Class Counsel support this Settlement, finding it fair, adequate, reasonable, and in the best interests of the Class Members. Among the reasons for support are the defenses to liability potentially available to Defendant, the inherent risk of trial on the merits, the potential for the Court to deny certification of the class, and the delays and uncertainties associated with litigation.

The Court granted preliminary approval of the Settlement on <<INSERT PRELIMINARY APPROVAL DATE>>.  At that time, the Court also preliminarily approved the Plaintiffs to serve as the Class Representatives, and the law firm of Cohelan Khoury & Singer, counsel for Plaintiff Penny Scott, to be designated as Class Counsel for purposes of this Settlement.

| 3. | **What are the terms of the Settlement?** |

Gross Settlement Amount.  Defendant has agreed to pay an "all in" amount of One Million Dollars and Zero Cents ($1,000,000) (the "Gross Settlement Amount") to fund the settlement of the BCI Wage and Hour Actions.  The Gross Settlement Amount includes all payments of Settlement Shares to Class Members contemplated by the Settlement, the Settlement Administration Expenses, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, Class Representative Service Payments, and the PAGA Payment for civil penalties. Any employer-side payroll taxes on the portion of the Settlement Shares allocated to wages shall be separately paid by Defendant.

The Court has approved CPT Group as the "Settlement Administrator".  Within forty-five (45) days of the Judgment becoming Final, the Settlement Administrator will mail checks for the Settlement Shares to Participating Class Members.  "Final" means the date the Judgment is entered, or if there are objections or any appeal, the date the Judgment is affirmed and is no longer subject to appeal.

Amounts to be Paid From the Gross Settlement Amount.  The Settlement provides for certain payments to be made from the Gross Settlement Amount as follows, which will be subject to final Court approval, and which will be deducted from the Gross Settlement Amount before Settlement Shares are made to Class Members who do not request exclusion ("Participating Class Members"):

- Settlement Administration Expenses.  Payment to the Settlement Administrator, estimated not to exceed $15,000.00, for expenses, including, without limitation, expenses of notifying the Class Members of the Settlement, processing opt outs, and distributing Settlement Shares and tax forms, and handling inquiries and uncashed checks.

- Class Counsel Fees Payment and Class Counsel Litigation Expenses Payment.  Payment to Class Counsel of reasonable attorneys' fees not to exceed One-Third (approximately 33.333%) of the Gross Settlement Amount, which is presently $333,333.33 and an additional amount to reimburse actual litigation costs incurred by Class Counsel, not to exceed $25,000.00.  Class Counsel has been prosecuting the BCI Wage and Hour Actions on behalf of Plaintiffs and the Class Members on a contingency fee basis (that is, without being paid any money) and has been paying all litigation costs and expenses. The payment of the Class Counsel Fees Payment shall be made as follows: 65% to Cohelan Khoury & Singer LLP; 25% to Lawyers for Justice; and 10% to Diversity Law Group. Payment of Class Counsel Litigation Expenses Payment shall be made to the firm that incurred the expenses.

- Class Representative Service Payments.  Class Representative Service Payments in an amount not to exceed Ten Thousand Dollars and Zero Cents ($10,000.00) to each of the Plaintiffs, or such lesser amount as may be approved by the Court, to compensate them for services on behalf of the Class in initiating and prosecuting the BCI Wage and Hour Actions, and for the risks they undertook.

- PAGA Payment.  A payment of $50,000.00 relating to the claim for penalties under the Private Attorney Generals Act ("PAGA"), $37,500.00 of which will be paid to the State of California's Labor and Workforce Development Agency ("LWDA Payment").  The

remaining will $12,500.00 will be distributed to the Aggrieved Employees based on their respective pay periods worked during the PAGA Period, which is May 21, 2020 until March 1, 2023 ("PAGA Period") for the Aggrieved Employees. "Aggrieved Employees" are all non-exempt employees employed by Defendant who worked for Kaiser Permanente facilities and hospitals in California at any time during the PAGA Period. The PAGA Payment shall be allocated to all Aggrieved Employees regardless of whether they request exclusion. One hundred percent (100%) of each Aggrieved Employee share of the PAGA Payment is in settlement of claims for civil penalties allegedly due which shall not be subject to wage withholdings, and shall be reported on IRS Form 1099.

Calculation of Payments to Class Members.  After all of the payments of the court-approved Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, the Class Representative Service Payments, the PAGA Payment, and the Settlement Administration Expenses are deducted from the Gross Settlement Amount, the remaining portion, called the "Net Settlement Amount", shall be distributed to Participating Class Members as Settlement Shares.  The Net Settlement Amount is estimated to be at least $526,666.67, based upon the above proposed deductions.  The Settlement Administrator will pay a Settlement Share from the Net Settlement Amount to each Participating Class Member.  The Settlement Share for each Participating Class Member will be calculated as follows: (a) the Settlement Administrator shall divide the Net Settlement Amount by the total number of workweeks included in the dates of employment to determine a dollar amount per week ("Weekly Rate"); and (b) the Settlement Administrator shall then take the number of weeks worked by each Participating Class Member and multiply it by the Weekly Rate to calculate their Settlement Share. Workweeks shall be based upon Defendant's payroll records, but Class Members will have the right to challenge the number of workweeks as explained below.

**If the Settlement is approved by the Court and you do not exclude yourself by completing a signed Request for Exclusion (Exhibit A), you will automatically be mailed a check for your Settlement Share to the same address as this Class Notice.  You do not have to do anything to receive a payment.**  If your address has changed, you must contact the Settlement Administrator to inform them of your correct address to ensure you receive your payment.

Tax Matters.  One-third (1/3) of each Participating Class Member's Settlement Share is in settlement of wage claims (the "Wage Portion").  Accordingly, the Wage Portion is subject to wage withholdings, and shall be reported on IRS Form W-2.  Two-thirds (2/3) of each Participating Class Member's Settlement Share is in settlement of claims for interest and penalties allegedly due to employees (collectively the "Non-Wage Portion").  The Non-Wage Portion shall not be subject to wage withholdings, and shall be reported on IRS Form 1099.  The employee portion of all applicable income and payroll taxes will be the responsibility of the Participating Class Members.  Neither Class Counsel nor Defendant's Counsel intend anything contained in this Notice to constitute advice regarding taxes or taxability.  The tax issues for each Participating Class Member are unique to him/her, and each Participating Class Member may wish to consult a tax advisor concerning the tax consequences of the payments received under the Settlement.

Conditions of Settlement.  This Settlement is conditioned upon the Court entering an order granting final approval of the Settlement and entering the Judgment.

| 4. | What Do I Release Under the Settlement? |
|---|---|

Released Class Claims.  Upon the Effective Date, all Class Members who do not submit a signed Request for Exclusion (Exhibit A) before the deadline will release Defendant Blackstone Consulting, Inc. and each of its past or present officers, directors, shareholders, employees, agents, principals, heirs, representatives, accountants, auditors, consultants, insurers and reinsurers, and its respective successors and predecessors in interest, subsidiaries, affiliates, parent companies, related entities and attorneys, and/or any individual or entity which could be jointly liable with them from any and all liabilities, demands, claims, causes of action, complaints and obligations, whether known or unknown, against the Released Parties during the Class Period that are or that could have been pled in the BCI Wage and Hour Actions, based on the facts alleged, or which are related to or could have been alleged in the causes of action in the BCI Wage and Hour Actions, relating to the payment or non-payment of wages and alleging violations of federal, state or local law or administrative order, such as the Industrial Welfare Commission Wage Orders and California Labor Code sections 201, 202, 203, 204, 226, 226.2, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 2698-2699 and 2802 and Business and Professions Code sections 17200 *et seq*., including the failure to pay wages for hours worked, minimum wage claims, overtime claims, regular rate claims, meal break violations, rest break violations, waiting time penalties, wage statement claims, failure to reimburse business expense claims, Unfair Competition Law violations, PAGA penalties and any other claims whatsoever that were alleged in this Action or which arise out of or directly or indirectly relate to such facts alleged in this Action, including without limitation all related claims for restitution and other equitable relief, conversion, liquidated damages, punitive damages and any other related claims and/or penalties of any nature whatsoever (collectively the "Released Claims"). Claims of the Class outside the Class Period and claims for discrimination, workers' compensation, wrongful termination and other unrelated employment-law claims are not encompassed within the Released Claims.

Class Members who do not opt out will be deemed to have acknowledged and agreed that their claims for wages and/or penalties in the lawsuit are disputed, and that the Settlement payments constitute payment of all sums allegedly due to them. Class Members will be deemed to have acknowledged and agreed that California Labor Code Section 206.5 is not applicable to the Settlement payments. That section provides in pertinent part as follows:

> **"An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made."**

If at any time on or before the Effective Date, any state or federal legislation, rule, administrative guidance or change in law, is implemented, enacted and/or interpreted which provides that any of the types of claims being asserted in the Action are preempted by federal law and/or have retroactive effect during the applicable Class Period, then Defendant will have the right to rescind and terminate the Settlement without prejudice to its pre-settlement positions and defenses in the Action, without any financial obligation related to the proposed Settlement set forth herein other than to pay for the costs of administration of the Settlement incurred by the Settlement Administrator through the time of such rescission and termination. Thereupon, the Parties will meet and confer regarding the status of the litigation.

In addition, in the event that more than 5% of the Class Members submit elections to Opt-Out of the Settlement or a number of Class Members whose share of the Net Settlement Amount is 5% or more, Defendant will have the right to rescind and terminate the Settlement without prejudice to its pre-settlement positions and defenses in the BCI Wage and Hour Actions. Should the 5% threshold for Opt-Outs be exceeded, then the Settlement Administrator shall notify lead counsel for all Parties via email immediately and will subsequently notify all Class Members accordingly.

Based on its records, Defendant represents that, as of December 31, 2022, there are 1,179 Class Members and 84,405 Total Workweeks during the Class period. In the event that the number of workweeks of the Class Members exceeds more than ten percent (10%) of the workweeks, then Defendant shall have the right to choose between the following two options: (1) increase the Gross Settlement Amount proportionally for each additional Settlement Class Member above the ten percent (10%) threshold; or (2) scale back the end of the Class Period such that there will be no more than 92,845 workweeks (approximately 10% more than 84,405) included in the Settlement.  If Defendant chooses either of the options, the Settlement Administrator shall notify lead counsel for all Parties via email immediately and will subsequently notify all Class Members accordingly.

<u>Released PAGA Claims</u>.  Upon the Effective Date, Defendant shall receive a release from the State of California of all PAGA claims for civil penalties under California Labor Code Sections 2698 *et. seq.*, predicated on the violations of the applicable California Labor Code sections and applicable Wage Orders as alleged in the LWDA Notices submitted by Plaintiffs and the operative First Amended Consolidated Complaint which occurred during the PAGA Period ("Released PAGA Claims").  The Released PAGA Claims may be released against all Released Parties.  The Released PAGA Claims exclude any PAGA claims outside the PAGA Period. The release of the Released PAGA Claims shall be effective as to all Aggrieved Employees, regardless of whether an Aggrieved Employee submitted a request for an exclusion from the Class.  The Released PAGA Claims do not include other PAGA claims, underlying wage and hour claims, claims for wrongful termination, discrimination, unemployment insurance, disability and worker's compensation, and claims outside of the PAGA Period.

| **5.** | **How much will my payment be?** |
|---|---|

**Defendant's records reflect that you have <<_____>> weeks worked for Defendant as Class Member during the Class Period.**  The Class Period is the period from May 21, 2017 to April 30, 2023.

**Based on this information, your estimated Settlement Share is <<_____>>.**

The workweeks have been calculated based on Defendant's records. If you feel that you were not credited with the correct number of workweeks or shifts during the Class Period, you may submit payment stubs, wage statements or other documents to establish the number of pay periods you claim to have actually worked during the Class Period to the Settlement Administrator no later than the Response Deadline. If the Parties cannot agree over the workweeks to be credited, the Settlement Administrator shall make the final decision based on the information presented by the Class Member and Defendant. DOCUMENTATION SENT TO THE SETTLEMENT

ADMINISTRATOR WILL NOT BE RETURNED OR PRESERVED; DO NOT SEND ORIGINALS. The Parties and Settlement Administrator will promptly evaluate the evidence submitted and discuss in good faith how many workweeks or shifts should be credited. The Settlement Administrator will make the final decision as to how many weeks are credited and report the outcome to the Settlement Participant.

## 6.     How can I get a payment?

To get money from the Settlement, you do not have to do anything.  A check for your Settlement Share will be mailed automatically to the same address as this Class Notice.  If your address is incorrect or has changed, you must notify the Settlement Administrator.  It is your responsibility to ensure that the Settlement Administrator has your current address on file, or you may not receive important information or a settlement payment. The Settlement Administrator is: CPT Group, (800) 542-0900.

The Court will hold a Final Approval Hearing on _____, at _____ to decide whether to approve the Settlement.  If the Court approves the Settlement and there are no objections or appeals, payments will be mailed within 45 days after the Court's Final Approval. If there are objections or appeals, resolving them can take time, usually more than a year.  Please be patient.

## 7.     What if I don't want to be a part of the Settlement?

If you do not wish to participate in the Settlement, you may exclude yourself from the Settlement or "opt out." **If you opt out, you will not receive a Settlement Share from the Settlement, and you will not be bound by the Settlement which means you will retain the right to sue Defendants for the Released Claims.** However, Aggrieved Employees who opt out will still be paid their allocation of the PAGA Payment and will remain subject to the release of the Released PAGA Claims regardless of whether they submit a Request for Exclusion.

To opt out, you must mail to the Settlement Administrator, by First Class Mail, a written, signed and dated Request for Exclusion (Exhibit A) postmarked no later than 45 days from the date the Class Notice was mailed to you. The Request for Exclusion must be received by the Settlement Administrator and must be filled out completely.

In the alternative, state in substance: "I wish to be excluded from the Class in the BCI Wage and Hour Actions.  I understand that if I ask to be excluded from the Class, I will not receive a settlement share from the settlement of the BCI Wage and Hour Actions." The Request for Exclusion must state the Class Member's full name, address, telephone number, the approximate dates of employment in California by Defendant, and the name and number of the BCI Wage and Hour Actions (*Scott v. Blackstone Consulting, Inc.,* Case No. 21-cv-1470-MMA; *Ahmir Ringo v. Blackstone Consulting, Inc., et al*., Case No. 22SMCV00066; *Tiffany Lockett and Tocashema Williams v. Blackstone Consulting, Inc.*, Case No. CVRI2201443; *Kawana Anderson v. Blackstone Consulting, Inc*. (PAGA only action), Case No. 22SMCV01667; and *Kawana Anderson v. Blackstone Consulting, Inc*. (Class action), Case No. 22STCV31450). The Request for Exclusion must be signed by you.  No other person may opt-out for a living member of the Class.

The address for the Settlement Administrator is 50 Corporate Park, Irvine CA 92606.

By filing a timely Request for Exclusion, you will no longer be a Class Member and will receive no benefits from the Settlement.

Any Request for Exclusion that is not postmarked within 45 days from the date the Class Notice was mailed to you will be considered invalid. Those Class Members who do not timely and validly submit a Request for Exclusion will be bound by the release of Released Claims, will be deemed to participate in the Settlement and shall become a Settlement Participant without having to take any other action.

## 8.    How do I object to the Settlement?

Any Class Member who has not opted out and believes that the Settlement should not be finally approved by the Court for any reason may object to the proposed Settlement, the attorneys' fees, the costs and/or the service awards, either in writing or in person. Objections that are in writing must state the Class Member's name, current address, telephone number, and the dates of employment in California by Defendant, and describe why you believe the Settlement is unfair and whether you intend to appear at the final approval hearing. All written objections or other correspondence must also state the name and number of the BCI Wage and Hour Actions (*Scott v. Blackstone Consulting, Inc.*, Case No. 21-cv-1470-MMA; *Ahmir Ringo v. Blackstone Consulting, Inc., et al.*, Case No. 22SMCV00066; *Tiffany Lockett and Tocashema Williams v. Blackstone Consulting, Inc.*, Case No. CVRI2201443; *Kawana Anderson v. Blackstone Consulting, Inc.* (PAGA only action), Case No. 22SMCV01667; and *Kawana Anderson v. Blackstone Consulting, Inc.* (Class action), Case No. 22STCV31450).

All written objections must be mailed to the Settlement Administrator at 50 Corporate Park, Irvine CA 92606 by no later than 45 days from the date the Class Notice was mailed to you. Any Class Member who does not request exclusion may, if the member so desires, enter an appearance through their own counsel.

Class Members who file a written objection may appear at the Final Approval Hearing on _____ at _____ to make an oral objection. You may contact Class Counsel if you need assistance to appear at the hearing or have questions.

To object to the Settlement, you must not opt out, and if the Court approves the Settlement despite your objection, you will be bound by the terms of the Settlement in the same way as Class Members who do not object and you will still be mailed a check for your Settlement Share. Any Class Member who does not object in the manner provided in this Notice shall have waived any objection to the Settlement, whether by appeal or otherwise.

## 9.    When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing at _____ on _____ , at the United States District Court, Southern District of California, located at 221 West Broadway San Diego, CA 92101 (Edward J. Schwartz United States Courthouse), in Department 3C before Judge Michael M. Anello.

At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. The purpose of this hearing is for the Court to determine whether to grant final approval to the Settlement. If there are objections, the Court will consider them. This hearing may be rescheduled by the Court without further notice to you. **You are not required to attend** the Final Approval Hearing, although any Class Member is welcome to attend the hearing remotely. Please see the most current information about the hearing at the Court's website at https://www.casd.uscourts.gov/.

| 10. How do I get more information about the Settlement? |
| --- |

You may call the Settlement Administrator at (800) 542-0900 or write to the Settlement Administrator, c/o 50 Corporate Park, Irvine CA 92606. You may also contact Class Counsel. The contact information for Class Counsel is as follows:

<u>**Class Counsel**</u>:

Isam C. Khoury
ikhoury@ckslaw.com
Michael D. Singer
msinger@ckslaw.com
Rosemary C. Khoury
Rkhoury@ckslaw.com
**Cohelan Khoury & Singer**
605 C Street Suite 200
San Diego, CA 92101
T: 619-595-3001
F: 619-595-3000
Attorneys for Penny Scott

Larry W. Lee
lwlee@diversitylaw.com
Max W. Gavron
mgavron@diversitylaw.com
Kwanporn "Mai" Tulyathan
ktulyathan@diveresitylaw.com
**Diversity Law Group P.C.**
515 S. Figueroa Street Suite 1250
T: 213-488-6555
F: 213-488-6554
Attorneys for Tiffany Lockett and Tocashema Williams

Edwin Aiwazian
Tara Zabehi
Jacquelyn Silva
**Lawyers for Justice PC**
410 West Arden Ave. Suite 203
Glendale, CA 91203
T: 818-265-1020
F: 818-265-1021
Attorneys for Ahmir Ringo and Kawana Anderson

**<u>Counsel for the Defendant is:</u>**

Pankit Doshi

pdoshi@mwe.com

Rae Chung

rchung@mwe.com

**McDermott Will & Emery LLP**

415 Mission Street, Suite 5600

San Francisco, CA 94105

Attorneys for Blackstone Consulting, Inc.

This Class Notice summarizes the proposed settlement. More details are in the Settlement Agreement. You may get more details by requesting the Class Counsel.

**PLEASE <u>DO NOT</u> CALL THE COURT ABOUT THIS NOTICE.**

<u>IMPORTANT</u>:

- You must inform the Settlement Administrator of any change of address to ensure receipt of your settlement payment.
- Settlement checks will be null and void 180 days after issuance if not deposited or cashed. In such event, the Settlement Administrator shall pay all unclaimed funds pursuant to California Code of Civil Procedure § 384 to Legal Aid at Work, as the *cy pres* beneficiary of the Parties' Agreement, subject to Court approval. If your check is lost or misplaced, you should contact the Settlement Administrator immediately to request a replacement.

**EXHIBIT A**
**REQUEST FOR EXCLUSION FROM CLASS ACTION SETTLEMENT**

*COMPLETE THIS FORM ONLY IF YOU CHOOSE NOT TO PARTICIPATE IN THIS SETTLEMENT.*

**INSTRUCTIONS: TO OPT-OUT OF THE SETTLEMENT, YOU MUST COMPLETE, SIGN AND MAIL THIS FORM BY FIRST CLASS U.S. MAIL OR EQUIVALENT, POSTAGE PAID, POSTMARKED OR FAXED ON OR BEFORE _____.**

ADDRESSED AS FOLLOWS: _____

Please fill in all of the following information (type or print):
NAME (First, Middle, Last): _____
STREET ADDRESS: _____
CITY, STATE, ZIP CODE: _____
FORMER NAMES (if any): _____
SOCIAL SECURITY NUMBER, or EMPLOYEE ID:_____
TELEPHONE NUMBERS: Home: _____ Work: _____

**IT IS STRONGLY RECOMMENDED THAT YOU RETAIN PROOF OF MAILING THIS FORM POST-MARKED OR FAXED ON OR BEFORE _____.**

In the matter of *Scott v. Blackstone Consulting, Inc.,* **United States District Court, Southern District of California** (**Case No. 21-cv-1470-MM**) (the "Representative Matter") and the "Related Matters":

- *Ahmir Ringo v. Blackstone Consulting, Inc., et al.*, Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV00066);
- *Tiffany Lockett and Tocashema Williams v. Blackstone Consulting, Inc.*, Superior Court of the State of California, County of Riverside (Case No. CVRI2201443);
- *Kawana Anderson v. Blackstone Consulting, Inc.* (PAGA only action), Superior Court of the State of California, County of Los Angeles (Case No. 22SMCV01667); and
- *Kawana Anderson v. Blackstone Consulting, Inc.* (Class action), Superior Court of the State of California, County of Los Angeles (Case No. 22STCV31450)

collectively referred to as the "BCI Wage and Hour Actions."

I [insert your name] _____ wish to be excluded from the settlement class in the BCI Wage and Hour Actions. I understand I will not receive money from the class settlement.

I further verify that the following is true: My name, address and other contact information are accurately set forth above. I received and read the Notice of Proposed Settlement of Class Action and Hearing Date for Final Court Approval that was sent to me along with this form.

I understand that by signing this side of the form, I voluntarily choose to "opt out" of the proposed Settlement of this Class Action. I understand that by opting out, I may not accept any

money allocated for me in the proposed Settlement.  On the other hand, I also understand that if I wish to assert any claims related to those set forth in this lawsuit, I will have to do so separately. I understand that any such claims are subject to strict time limits, known as statutes of limitations, which restrict the time within which I may file any such action.  I understand that I should consult with an attorney if I wish to obtain advice regarding my rights with respect to this Settlement or my choice to opt out of the Settlement.  I have not been coerced by anyone to opt out of this Class Action, and I choose to opt out of my own free will.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Signed: _____

Date: _____

Print Name: _____

Last four digits of Social Security Number or Employee ID: _____

# EXHIBIT 2

**Amber Worden**

| | |
|---|---|
| **From:** | DIR PAGA Unit <lwdadonotreply@dir.ca.gov> |
| **Sent:** | Wednesday, May 17, 2023 3:15 PM |
| **To:** | Amber Worden |
| **Subject:** | [External] Thank you for your Proposed Settlement Submission |

05/17/2023 03:13:46 PM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Proposed Settlement
If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: https://urldefense.proofpoint.com/v2/url?u=http-3A__labor.ca.gov_Private-5FAttorneys-5FGeneral-5FAct.htm&d=DwIFaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-v5A_CdpgnVfiiMM&r=1sYpYEGF76QN6w9hehxsqEIpMNt5gOV6_lRPmxDj0Ew&m=5w4h7yM2nLxwdoN8UnB226njp5zSzmBBHVQ4LsQ17y0&s=Nj9BQAfpccgvXbvrLqYA8_6JZi6CMasgysthOZu2F3Q&e=